[No. 2,669.]

## FELIX GAMBERT *v.* JESSE B. HART.

ACTIONS AGAINST ATTORNEYS FOR NEGLIGENCE.—In actions against attorneys for negligence or want of skill in the management of suits, when the facts are ascertained the question of negligence or want of skill is a question of law for the Court.

IDEM.—If the attorney for a party makes a mistake or blunder, by submitting a motion for a new trial before the statement is certified, by reason of which the appellate Court is prevented from looking into and reviewing the action of the Court below on the trial, and the attorney is sued for such mistake or blunder, the Court cannot assume, in the case against the attorney, as matter of law, that the Supreme Court would have decided the case against the attorney's client if it had been fairly before it, and that, therefore, the client has sustained no damage.

WHAT IS NEGLIGENCE IN AN ATTORNEY.—An attorney is liable for the

want of such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise.

IDEM.—It is a want of ordinary care and skill in an attorney to submit a motion for a new trial before the statement in support of it is certified.

EVIDENCE TO PROVE WHAT IS NEGLIGENCE IN AN ATTORNEY.—In an action against an attorney for negligence in conducting a suit, evidence of another attorney is not admissible to show that, upon the facts admitted or proved, the attorney was guilty of negligence.

AN ERROR WHICH DOES NO HARM.—A new trial will not be granted by reason of an error committed during the trial, which does the moving party no harm.

JUDICIAL NOTICE OF EVIDENCE.—If the Court excludes a remittitur as evidence, on the ground that it will take judicial notice of it, the presumption is that it did take judicial notice of it.

APPEAL from the District Court of the Third Judicial District, County of Santa Clara.

The defendant is an attorney and counsellor at law. This action was commenced against him on the 24th day of December, 1868, to recover damages for the alleged careless, negligent, and unskillful manner in which he had conducted the defense of an action brought by Francis M. Quivey against this plaintiff, on the 4th day of April, 1865. Said action of *Quivey* v. *Gambert* was ejectment to recover possession of a lot in the City of San José, Santa Clara County. On the 12th day of July, 1847, John Burton, Alcalde of the then Pueblo, and now City of San José, granted the lot to Joseph S. Ruckel; and on the 13th day of June, 1850, Ruckel mortgaged it to Peter Quivey, to secure the payment of six thousand seven hundred and ninety-eight dollars. In the mortgage the lot was, by mistake, described as lot two, block three, whereas its true description was lot two, block two.

The mortgage was afterwards foreclosed, and the lot sold by the Sheriff to Peter Quivey, who, after due time, received a Sheriff's deed. The mistake in the description ran through all the proceedings in the foreclosure and sale, and was copied into the Sheriff's deed. The purchaser at

the Sheriff's sale entered into possession. The title of Peter Quivey thus acquired came by mesne conveyances to Morris Wise, who, after the discovery of the mistake, and in June, 1862, commenced an action against Peter Quivey, John Yontz, William War, A. Ingram, and said Ruckel, to correct the said mistakes, and to quiet his title. The Sheriff served the summons on all the defendants, except Ingram and Ruckel, and returned that he was unable to find them.

The judgment roll contained this return of the Sheriff. It also contained an affidavit of the proprietor of the San José *Tribune,* that the summons had been published three months, and an order of the Judge that such publication be made, but no affidavit to justify said order. Judgment was rendered against the defendants by default, and the plaintiff's title was quieted, and a Commissioner appointed by the Court to convey whatever title the defendants had to the plaintiff. The Commissioner then executed the conveyance. The title of Wise thus acquired afterwards passed to Gambert, the present plaintiff; and after the Commissioner had made said deed Ruckel conveyed the lot to Francis M. Quivey, who, on the 4th day of April, 1865, commenced an action of ejectment against Gambert to recover possession of the lot, relying on his deed from Ruckel, and the grant made to Ruckel by the Alcalde. To cut off Gambert's title under the action brought to correct the proceedings on the foreclosure, he relied on the fact that the publication of the summons in that action gave the Court no jurisdiction over the persons of Ruckel or Ingram. The judgment in said last named action recited that the summons had been served on all the defendants. The cases of *Forbes* v. *Hyde* and *McMinn* v. *Whelan,* the first in the 31 Cal. 344, and the last in the 27 Cal. 312, will throw light on the question of the jurisdiction of the Court before the case of *Hahn* v. *Kelly,* mentioned in the opinion. The following

is the contract between Gambert and the defendant in relation to the ejectment suit:

"The understanding and agreement between J. B. Hart and myself as to the (his) fees in this case is, that I am to pay him five hundred dollars in gold coin, in case the suit is gained after a trial, or trials, before the Supreme Court on its merits, and I retain my property, and nothing if it is lost. As to the disbursements in regard to the first appeal from the order striking out the statements, sixty-five dollars of those disbursements I am to pay, and Hart is to pay the residue; that is, the printing, and Clerk's costs, and his expenses. The suit is not to be compromised without Hart's consent; if I do, without Hart's consent, I am to pay him the five hundred dollars in gold or silver coin.

"April 9th, 1867.

[Stamp, U. S. Rev.]                    "F. GAMBERT."

"The above is a true copy of the original in my possession.                    J. B. HART."

On the trial of the ejectment suit, F. M. Quivey recovered judgment and was placed in possession by virtue of a writ of restitution. The defendant prepared a statement on motion for a new trial. The Court below, in deciding this case, filed the following opinion, which is referred to in the opinion of Mr. Justice CROCKETT:

"The plaintiff in this action was sued in an action of ejectment commenced by one Quivey to recover possession of a lot of land in San José. He employed the defendant as an attorney at law to make his defense to that action. The defense consisted of a claim of title to the lot deraigned through a certain judgment, execution, and Sheriff's sale and deed. But this judgment, according to the decisions of the Supreme Court in *Jordan* v. *Giblin*, *People* v. *Huber*,

*Steinbach* v. *Leese, Forbes* v. *Hyde, Braly* v. *Seaman, Ricketson* v. *Richardson,* and *McMinn* v. *Whelan,* was void for want of jurisdiction of the person of the defendant in the action, and the defense to the action against the plaintiff here, resting as it did upon that judgment, was unavailable.

" Of this, learned counsel other than this defendant advised the plaintiff, and that it would be best for him to settle the action; but this advice he disregarded, and employed the defendant to make his defense. The defendant made it, and made it honestly and to the best of his knowledge and ability, so far as appears by the evidence before me. Judgment was rendered in the action against the plaintiff at the May Term, 1866, of this Court, but the defendant continued to conduct proceedings in the action for the purpose of having the judgment vacated and obtaining a new trial. In the course of his proceedings, the Court, by an order, struck out his statement on motion for a new trial, for some informality. From this order he appealed to the Supreme Court, and the Supreme Court dismissed his appeal. This Court then set aside its order striking out his statement, and allowed him to proceed with his motion for a new trial. That motion was afterwards presented by him, but he presented it without a certified statement, as required by law, and his motion for a new trial was denied. It was undoubtedly a mistake, if not a blunder, to present the motion for a new trial without a certified statement; but, working under the decisions of the Supreme Court which I have mentioned, and to which *nisi prius* Courts owed the duty of obedience, there was no error in rendering judgment against the plaintiff in that action, and it could not, according to law, have been set aside and a new trial granted. The mistake of the defendant, therefore, in a mere matter of practice, did not damage the plaintiff, in legal contemplation, and it has not been shown that it caused to him any damage in fact. True, the plaintiff has been dispossessed of the property which

was involved in the action; but that was not in consequence of the defendant's mistake on the motion for a new trial, but in consequence of the judgment rendered against the plaintiff according to the law as it had been announced by the highest judicial tribunal. Had the law remained as in the reported cases at the time of the entry of the judgment and order denying the motion for a new trial, there would have been no cause for this action. But afterwards, the Supreme Court, in *Hahn* v. *Kelly,* without, in express terms, overruling the cases I have mentioned, changed its opinion of the law announced in them, and in consequence the judgment through which the plaintiff claimed title to the property, and which according to them was void, became valid.

"The change, however, came too late for the plaintiff. He suffered from the preterlapsed law, and could not have his rights readjudicated by that which was announced to take its place. The judgment against him was affirmed at the very term at which *Hahn* v. *Kelly* was decided. His case is only another one among which serves to illustrate the uncertainty of the application of law to the rights of persons and property.

"Let judgment be entered for the defendant.

"S. B. McKEE, District Judge."

On the trial of the ejectment case against Gambert, the Court below refused to admit the judgment roll in *Wise* v. *Quivey et al.* in evidence as against Ruckel, because the Court had no jurisdiction of his person.

Judgment was rendered for the defendant, and the plaintiff appealed.

The other facts are stated in the opinion.

*J. Alexander Yoell* and *F. E. Spencer,* for Appellant.

It was gross negligence of the defendant to submit the motion for a new trial of the action of *F. M. Quivey* v.

*Gambert* for decision without any certificate or stipulation of the statement therein having been first settled and allowed by the Judge, or that it was correct.

Both of the judgments given in evidence on the trial of the action of *F. M. Quivey* v. *Gambert* had been passed upon by this Court and decided to be valid prior to the trial of this cause in the Court below (see *Quivey* v. *Porter*, 37 Cal. 358), and, therefore, if the case of *F. M. Quivey* v. *Gambert* had been properly appealed to this Court the judgment therein rendered by the District Court must have been reversed, and no recovery as herein complained of could have been had.

An attorney is liable for ordinary skill, diligence, and care in the exercise of his profession, and is liable for ordinary neglect. (2 Hilliard on Torts, 488; *Holmes* v. *Peck*, 1 R. I. 242; *Cox* v. *Sullivan*, 7 Ga. 144; *Walker* v. *Goodman*, 21 Ala. 647; *Goodfroy* v. *Dalton*, 6 Bing. 460–67; *Varnum* v. *Martin*, 15 Pick. 440.)

*S. Heydenfeldt*, for Respondent.

The respondent was not guilty of gross negligence on the trial of the plaintiff's case with F. M. Quivey, nor was he guilty of gross negligence in any matter or thing connected with said trial.

The plaintiff, at the time of the trial of his case with F. M. Quivey, as the law then stood and was in force, could not prevent the said Quivey from recovering the property in controversy. (*Ricketson* v. *Richardson*, 26 Cal. 152.)

The motion for a new trial, in the case of the said F. M. Quivey against the plaintiff, was unavailing to the plaintiff as the law stood, and was in force at the time. (*Hahn* v. *Kelly*, 34 Cal.)

The following opinion was filed by the Court, at the January Term, 1872, after which a rehearing was granted:

By the Court, CROCKETT, J.:

The negligence imputed to the defendant is, first, his fail-ure to file and serve a proper notice of the motion for new trial; second, his submission of the motion before the state-ment in support of it had been settled or agreed to. At the trial the plaintiff called the witness, Benham, to prove that these acts amounted to negligence in the defendant, as an attorney. But the Court excluded the evidence, and this ruling is assigned as error. The witness was not called to prove any *fact* in the case, and his evidence, if admitted, would have been only an expression of his opinion as an attorney, that the alleged acts or omissions of the defendant amounted to negligence in law. This was a question for the Court, and not for the witness to decide. The facts being admitted or proved, it was a question of law for the Court whether they establish negligence in the defendant. The evidence was properly excluded. The plaintiff also offered in evidence the remittitur from this Court in the case of *Quivey* v. *Baker*, but the Court excluded it on the ground that it would take judicial notice of the decisions of this Court. If the Court erred in excluding the evidence, it was an error which did the plaintiff no harm. We must pre-sume that the Court did take judicial notice of the decision, as it announced it would do, and that the plaintiff had the benefit of it as fully as though the evidence had been admitted.

The only other ground of error relied upon is, that the evidence was insufficient to justify the decision and judg-ment. But there is a substantial conflict in the evidence on the question whether the defendant was retained or relied upon to conduct the case as the attorney, or only volunteered, without a retainer, as counsel to consult and advise with another attorney charged with the defense. The defendant testifies that the written contract between the plaintiff and

himself referred to the trial in the Supreme Court; and if I understand his testimony correctly, it is to the effect that whilst the action was pending in the District Court he was not retained by the plaintiff to conduct the case, but volunteered, as an act of friendship, to consult and advise with Mr. Yoell, whom he understood to have been retained as the attorney. The plaintiff and Mr. Yoell however, testify strongly to the contrary; and it cannot be denied that the preponderance of the evidence on this point appears to be in favor of the plaintiff. But it is for the Court below to weigh the evidence when it is conflicting; and when the conflict is substantial, the practice of this Court is not to disturb the judgment.

Judgment affirmed.

Mr. Justice WALLACE, having been counsel in the Court below, did not sit in this case.

Mr. Justice RHODES dissented.

After rehearing, the following opinion was filed at the October Term, 1872:

By the Court, CROCKETT, J.:

The Court below did not base its decision in favor of the defendant on the ground that he had not been retained by the plaintiff to conduct the defense of the action to *Quivey* v. *Gambert.* On the contrary, it directly appears from the opinion of the Court (which escaped our attention at the former hearing, because it formed no part of the printed transcript as originally filed, and was only a manuscript copy subsequently permitted to be filed) that the defendant was retained and did, in fact, conduct the defense of that action. Nor does the Court find that the defendant conducted the defense with proper skill, care, and diligence, but that he conducted it " honestly to the best of his knowledge and

ability," and that "it was undoubtedly a mistake, if not a blunder, to present the motion for a new trial without a certified statement." The Court, however, held that this mistake or blunder did not injure the plaintiff, for the reason that under the law, as it had been previously expounded by this Court, the judgment in *Quivey* v. *Gambert* was correct, and would not have been reversed on appeal; and that, therefore, the plaintiff suffered no damage by reason of the mistake or blunder of the defendant, which prevented the motion for a new trial from being heard on its merits. The Court further says that "afterwards the Supreme Court, in *Hahn* v. *Kelly,* without in express terms overruling the cases I have mentioned, changed its opinion of the law announced in them, and in consequence the judgment through which the plaintiff claimed title to the property, and which according to them was void, became valid. The change, however, came too late for the plaintiff. He suffered from the preterlapsed law and could not have his rights readjudicated by that which was announced to take its place. The judgment against him was affirmed at the very term at which *Hahn* v. *Kelly* was decided." But, if it be conceded that the decision in *Hahn* v. *Kelly* wrought the change imputed to it by the Court below, the conclusion by no means follows that the plaintiff might not have had the benefit of the alleged change in the opinion of this Court on a rule of law, provided his appeal has been brought here in such form that we could have considered it on its merits.

The appeal which the plaintiff prosecuted was dismissed, it appears, at the same term at which *Hahn* v. *Kelly* was decided, because of defects in the statement, which prevented us from considering the appeal on its merits. If we had been at liberty to look into the merits of the case it may be that it would not have been decided until after the decision of *Hahn* v. *Kelly,* or, if decided before, the presumption is it would have been decided in accordance with

the principles announced in that case, which was decided at
the same term.    The Court, therefore, erred in holding that
the mistake or " blunder " of the defendant could not have
resulted in a damage to the plaintiff.    The Court having
found that the defendant was retained by the plaintiff to
conduct the defense in *Quivey* v. *Gambert*, and that he sub-
mitted the motion for a new trial without a certified state-
ment to support it, in consequence of which omission the
motion could not be considered on its merits in the Court
below, nor in this Court on appeal, the only remaining ques-
tion is whether this omission, if unexplained, constituted
such negligence or want of skill as to render the defendant
liable in damages.    In actions of this character against
attorneys, the rule is well settled that when the facts are
ascertained the question of negligence or want of skill is a
question of law for the Court.    But there is a considerable
conflict in the authorities as to the degree of diligence and
skill to which an attorney shall be holden and for which the
law implies that he contracts with his client.    In the Eng-
lish Courts there have been cases decided by eminent
Judges, in which the rule is laid down that an attorney is
liable only for gross negligence, *crassa negligentia*, or for
gross ignorance in the conduct of a cause, resulting in a
damage to the client.    (*Bakie* v. *Chandless*, 3 Camp. 17;
*Purvass* v. *Landell*, 12 Clark and Finn, 91 ; *Godefroy* v.
*Dalton*, 6 Bing. 468.)

The rule firmly established in this country by the weight
of authority is that an attorney is bound to use ordinary skill
and care in the course of his professional employment.

In the late work of Shearman & Redfield on Negligence,
section two hundred and twelve, it is said: " The true rule
of liability undoubtedly is, that an attorney is liable for a
want of such skill, prudence, and diligence as lawyers of
ordinary skill and capacity commonly possess and exercise."
This is the principle recognized in *Wilson* v. *Russ*, 20 Maine,

421; *Goodman* v. *Walker*, 30 Ala., N S., 482; *Cox* v. *Sulli-van*, 7 Ga. 144, and numerous other American cases, and, we think, is not only established by authority, but is founded in reason and justice.

Applying this rule to the present case, we are of opinion that upon the facts disclosed by the record, the defendant did not conduct the plaintiff's case with ordinary care and skill, in submitting the motion for a new trial without a cer-tified statement to support it. The statute, which had been in force for many years, not only required such a statement, but there had been numerous adjudications of this Court, showing the necessity of a statement of that character, in order to enable the Court to hear and decide a motion for new trial in such a case as *Quivey* v. *Gambert* on its merits. That such a statement was necessary in such a case was well understood by the profession, and it had been for many years the practice to prepare such statements in similar cases. In omitting to perform his duty in this respect, the defendant, as the facts are here presented, was guilty of negligence, or betrayed great want of skill in his profession.

Judgment reversed and cause remanded for a new trial.

Mr. Chief Justice WALLACE, having been of counsel in the Court below, did not sit in the case.