[Civ. No. 45020. Second Dist., Div. One. Apr. 30, 1975.]

ROGERS H. WRIGHT et al., Plaintiffs and Appellants, v.
REED M. WILLIAMS, Defendant and Respondent.

804

**COUNSEL**

Baltaxe, Rutkin, Kaplan & Klein and George Baltaxe for Plaintiffs and Appellants.

Dunne, Shallcross & Kane, Russell E. Shallcross and Roy E. Harper for Defendant and Respondent.

**OPINION**

**THOMPSON, J.**—In this appeal from a judgment on respondent's-defendant's motion pursuant to Code of Civil Procedure section 631.8 entered in plaintiffs'-appellants' action for legal malpractice, appellants contend that the trial court applied an overly restricted standard of duty owed by respondent to appellants. ■ We conclude that appellants having failed to offer expert testimony defining the standard of duty owed by respondent in the performance by him of a highly specialized legal service or that respondent failed to perform as a reasonably prudent specialist in his field, appellants' did not sustain their burden of proof in the trial court. Accordingly, we affirm the judgment.

We recite the record in the light most favorable to the findings of fact of the trial court, accepting its resolution of conflicts in the evidence.[1] In that light, the record discloses the following. Early in 1969, appellants Dr. Rogers H. Wright and Dr. Alan J. Glasser, both practicing psychologists, and Samuel Lecocq, the owner of a chain of skin diving

---

[1] Appellants concede that the matter was appropriate for disposition pursuant to Code of Civil Procedure section 631.8.

supply houses, decided to form a business offering cruises in Southern California waters to skin divers. They sought a vessel adequate for that purpose. In September of 1969, appellants tentatively agreed to purchase *Kona Sea*, an 83-foot converted Coast Guard vessel, for a price of $43,000 intending to refurbish her and use her in their contemplated business venture. *Kona Sea* was hauled from the water for the purpose of a survey. The survey revealed hull damage requiring extensive correction. Accordingly, the purchase was renegotiated to a price of $37,000, and a written agreement reached for a sale at that price on December 15, 1969. Concerned about the possible existence of liens for past repairs on the vessel, questions concerning its ownership and the matter of a mortgage upon the boat, appellants consulted Richard G. Wilson, Dr. Wright's attorney. Wilson concluded that the matter was not one within his field of expertise and, with appellants' consent, referred the matter to respondent, a specialist in maritime law. Wilson informed respondent that appellants were concerned about acquiring title to *Kona Sea* free of liens and mortgages.

Appellants consulted respondent on December 16. They did not inform him that they intended to use *Kona Sea* in a business venture and, when asked the purpose for which the vessel would be used, replied, "Pleasure." Appellants stated that they wished respondent to see that they obtained a clear title and that their purchase was properly documented. Respondent arranged for the transfer of title of the vessel in a manner removing an existing mortgage and providing for an indemnity against liens. The documents of title examined by him included a statement on a bill of sale to the seller: "As amended by section 27 of the Merchant Marine Act of June 5th, 1920, as amended, this vessel shall not engage in the coastwise trade." The provision was incorporated in a bill of sale from the seller to appellants prepared by respondent. As amended, section 27 of the Merchant Marine Act of 1920 prohibits the use of a vessel in coastwide trade if the vessel has, at some time in its history, been owned by an alien. Coastwide trade is defined by applicable federal regulations as including the hauling of freight or passengers for hire between ports in the United States. As so interpreted, the Merchant Marine Act of 1920 precluded the use of *Kona Sea* for appellants' intended purpose since the vessel had once been owned by a Mexican national.

The purchase of *Kona Sea* was consummated. Two checks from appellants, one for $7,000 and the other for $30,000, were delivered through respondent to the seller and mortgagee, and the documents of

title were delivered to appellants and recorded with the Coast Guard. Subsequently, appellants were cited by the Coast Guard for using *Kona Sea* in violation of the Merchant Marine Act of 1920. Aware that they could not use *Kona Sea* in their commercial diving venture, appellants sued respondent for malpractice claiming that by reason of his negligence in representing them in the transaction appellants had been damaged by the "stigma" in the title of the vessel.

The case was tried to a judge sitting without a jury. The issue of liability was tried prior to that of damages. Appellants' theory was twofold: (1) they produced evidence that respondent knew of the purpose for which they intended to use the vessel; and (2) they argued that the standard of care applicable to respondent as a specialist in maritime law required that, irrespective of lack of knowledge of the intended purpose, he have notified appellants of the legal effect of the restriction appearing in the documents of title. The testimony on the issue of respondent's knowledge of their intended purpose was conflicting, there being substantial evidence that the only statement of purpose made by appellants was that *Kona Sea* was being purchased as a yacht to be used for pleasure. Appellants offered no expert testimony relevant to their claim that respondent failed in the performance of his duty of due care.

At the conclusion of appellants' case in chief, respondent moved for judgment pursuant to Code of Civil Procedure section 631.8. The trial court granted the motion. It entered findings of fact: (1) prior to consulting respondent, appellants had agreed in writing to purchase *Kona Sea* and the agreement was not contingent upon any use of the vessel; (2) appellants had not engaged respondent to advise and assist them in the purchase but had consulted him to document the change of title to the vessel and to clear the title of any liens; (3) appellants did not inform respondent of their intended use of the vessel beyond random conversation that it would be used for skin diving; (4) appellants received a clear title to *Kona Sea* free of any liens or mortgage; and (5) respondent "did not have full knowledge of the full legal meaning of the term 'coastwide trade' " at his first conference with appellants. The trial court concluded that appellants had not carried their burden of proof, that respondent had fulfilled the obligation for which he was retained, and that he was not negligent. Judgment was entered accordingly, and this appeal followed.

Appellants concede that the trial court's findings of fact are supported by substantial evidence. They contend, however, that the record compels

the conclusion that respondent was negligent as a matter of law, arguing that a reasonably prudent specialist in maritime law would have informed his client of the effect of the coastwide trade endorsement on the documents of title irrespective of his having been told by his clients that they intended to use the vessel for a purpose not proscribed by the endorsement. Appellants' contention fails for lack of evidence defining the standard of care applicable to respondent.

*Issues*

The threshold issue of the case at bench is categorization of the question of attorney negligence as one of law or of fact. Subsidiary to that issue is the further question of the admissibility of evidence establishing the standard of care required of the lawyer. If the issue is categorized as one of law, this court must make its independent decision of the issue limited in its function only by the trial court's resolution of conflicts in the evidence of what was required by the client of the lawyer and what was disclosed by the client to him. If the issue is categorized as one of fact, our role is limited to an examination of the record to determine if it supports the trial court's findings of fact and conclusions of law.

*Attorney Negligence -*
*Question of Law or of Fact*

After a shaky start, the California law has evolved the proposition that the issue of attorney malpractice is in essence a question of fact similar to that involved in other professional negligence.

Something over 100 years ago, the California law was to the contrary. In *Gambert* v. *Hart,* 44 Cal. 542, 552, our Supreme Court declared that once the facts underlying an action for attorney malpractice were established the question of the attorney's negligence was one of law to be determined by the court. The court in *Gambert* thus applied its personal expertise to take judicial notice of what it perceived to be reasonable care by an attorney on underlying circumstances determined by the trier of fact. Although widely criticized (see e.g., *Ishmael* v. *Millington,* 241 Cal.App.2d 520, 525, fn. 1 [50 Cal.Rptr. 592]; *Floro* v. *Lawton,* 187 Cal.App.2d 657, 675-676 [10 Cal.Rptr. 98]; Abbott, *Use of Expert Testimony in Attorney Malpractice Cases,* 15 Hastings L.J. 584), *Gambert* continued unoverruled. Its scope was limited, however, by decisions accepting the propriety of expert testimony on the question of

whether the attorney's conduct was or was not negligent—testimony which is irrelevant if the issue of attorney malpractice is a true question of law. (See e.g., *Martin* v. *Hall,* 20 Cal.App.3d 414, 423 [97 Cal.Rptr. 730, 53 A.L.R.3d 719]; *Starr* v. *Mooslin,* 14 Cal.App.3d 988, 996-999 [92 Cal.Rptr. 583.)

*Gambert's* remaining vitality was severely limited by the enactment of the Evidence Code which undercut its foundation. Section 450 of the code permits judicial notice to be taken only as authorized or required by law. Sections 451 and 452, specifying matter that must or may be judicially noticed, are silent on a court's right to determine the negligent or nonnegligent manner of lawyer conduct by resort to its own experience, subject to the single right and requirement that the court take judicial notice of the ". . . Rules of professional conduct for members of the bar . . . ." (Evid. Code, § 451, subd. (c).)

*Gambert* was laid to rest, albeit silently, in *Smith* v. *Lewis,* 13 Cal.3d 349 [118 Cal.Rptr. 621, 530 P.2d 589]. In affirming a judgment on a jury verdict finding an attorney guilty of malpractice for failing to recognize the possibility of community property rights in retirement benefits, our Supreme Court approved trial court action instructing the jury that an attorney is obligated to possess skill and learning of attorneys in good standing practicing in the same or similar localities under similar circumstances, and to use the care and skill ordinarily exercised by reputable members of the profession in the same or similar locality under similar circumstances. It approved, also, an instruction that the failure to perform those duties is negligence. (*Smith* v. *Lewis, supra,* 13 Cal.3d 349, 355 fn. 3, 360.) While approving those instructions, the high court upheld the trial court's refusal of the lawyer's tendered instruction that he was " 'not liable for being in error as to a question of law on which reasonable doubt may be entertained by well informed lawyers.' " (*Smith* v. *Lewis, supra,* 13 Cal.3d 349, 360.) By approving the trial court's action in instructing the jury in a fashion which left to it the determination of whether the attorney's conduct was under the facts negligent or not, our Supreme Court impliedly disapproved of *Gambert's* inflexible proposition that judges apply, in all instances, their own experience to decide whether attorney conduct is negligent or satisfies the duty of due care.

*Smith* v. *Lewis* teaches that attorney malpractice is to be determined by the rules that apply to professional negligence generally, subject to the necessary qualification that the court must determine legal questions

which underlies the ultimate decision. There are cases involving the question of attorney malpractice where reasonable minds cannot differ on the ultimate result that the conduct does or does not satisfy the duty of care. In those, the question is treated as one of law and not of fact, as it is in any negligence action. (See *Moser* v. *Western Harness Racing Assn.,* 89 Cal.App.2d 1, 9 [200 P.2d 7], failure to apply elementary principle of corporate law involving preincorporation subscription agreement negligence as a matter of law; *Lucas* v. *Hamm,* 56 Cal.2d 583, 592 [15 Cal.Rptr. 821, 364 P.2d 685], failure of attorney to recognize an esoteric problem (see *Smith* v. *Lewis, supra,* 13 Cal.3d 349, 359) and consequently drawing an instrument which violated the rule against perpetuities is, as a matter of law, not negligence.)[2] There are cases where regardless of the attorney's negligence his advice or action was correct because of a governing legal principle so that the negligence does not proximately cause harm. (*Martin* v. *Hall,* 20 Cal.App.3d 414, 420 [97 Cal.Rptr. 730, 53 A.L.R.3d 719]; *Banerian* v. *O'Malley,* 42 Cal.App.3d 604, 615 [116 Cal.Rptr. 919].) Except in those situations, the issue is one of fact. The case at bench does not involve special circumstances. Hence, we must examine the record to determine the support for the trial court's determinations of fact. That examination requires analysis of the standard of care governing respondent's performance of legal services and the presence or absence of evidence defining the specifics of the standard, and establishing failure of performance to it.

### *Standard of Care*

■ Generally, the creation of the attorney-client relationship imposes upon the lawyer the obligation to represent his client with " 'such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' " (*Ishmael* v. *Millington,* 241 Cal.App.2d 520, 523 [50 Cal.Rptr. 592]; *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421].) The standard is that of members of the profession "in the same or a similar locality under similar circumstances" (see *Smith* v. *Lewis, supra,* 13 Cal.3d 349, 355 fn. 3, 360, approving jury instructions to that effect). ■ The duty encompasses both a knowledge of law and an obligation of diligent research and informed judgment. (*Smith* v. *Lewis, supra,* 13 Cal.3d 349, 358-359.)

---

[2]There is reason to doubt that the ultimate conclusion of *Lucas* v. *Hamm* is valid in today's state of the art. Draftsmanship to avoid the rule against perpetuities seems no longer esoteric. (See e.g., Cal. Will Drafting (Cont.Ed.Bar 1965) §§ 15.43-15.71; Bowman, Ogden's Revised Cal. Real Property Law (Cont.Ed.Bar 1974) §§ 2.44-2.45.)

We have found no California decision dealing with the standard of care applicable to a legal specialist such as respondent. While analytical legal writing is strongly persuasive that the standard of care in such situations should be that of legal specialists and not lawyers in general (Levit & Mallen, Syllabus Legal Malpractice (Cont.Ed.Bar 1974) 13; Fletcher, *Standard of Care in Legal Malpractice,* 43 Ind.L.J. 771, 787-789; Note, *Attorney Malpractice,* 63 Colum.L.Rev. 1292, 1302-1304), cases in other jurisdictions seem similarly silent. (Levit & Mallen, *supra,* 11.)

*Smith* v. *Lewis, supra,* 13 Cal.3d 349, indicates, however, that what thinking legal analysts conclude should be the standard of care applicable to legal specialists is the law of California. Our Supreme Court has approved a jury instruction phrasing the lawyer's duty as that of members of the profession under similar circumstances (13 Cal.3d pp. 355 fn. 3, 360). One who holds himself out as a legal specialist performs in similar circumstances to other specialists but not to general practitioners of the law. ■ We thus conclude that a lawyer holding himself out to the public and the profession as specializing in an area of the law must exercise the skill, prudence, and diligence exercised by other specialists of ordinary skill and capacity specializing in the same field.

### Proof of the Standard and Performance to It

While California law holds that expert testimony is admissible to establish the standard of care applicable to a lawyer in the performance of an engagement and whether he has performed to the standard (*Starr* v. *Mooslin,* 14 Cal.App.3d 988 [92 Cal.Rptr. 583], it by no means clearly establishes the parameters of the necessity of expert testimony to the plaintiff's burden of proof. ■ In some situations, at least, expert testimony is not required. (Levit & Mallen, Syllabus Legal Malpractice (Cont.Ed.Bar 1974) 30-33; cf. *Brown* v. *Gitlin,* 19 Ill.App.3d 1018 [313 N.E.2d 180]; *Kohler* v. *Woollen, Brown & Hawkins,* 15 Ill.App.3d 455 [304 N.E.2d 677].) The case at bench is not one of them. In some circumstances, the failure of attorney performance may be so clear that a trier of fact may find professional negligence unaided by the testimony of experts.[3] Where, however, the malpractice action is brought against an attorney holding himself out as a legal specialist and the claim against him is related to his expertise as such, then only a person knowledgeable in the specialty can define the applicable duty of care and opine whether

---

[3]We do not here reach the issue of the applicability of res ipsa loquitur to attorney malpractice.

it was met. (Levit & Mallen, Syllabus Legal Malpractice (Cont.Ed.Bar 1974) 12.)

The case at bench illustrates the need for the aid of experts. Respondent was engaged to perform a service in the highly specialized area of admiralty law. He failed to call his clients' attention to a problem in the documentation of *Kona Sea,* the significance of which cannot be determined by reference to general knowledge. Without expert testimony that a reasonably prudent specialist in admiralty law would, under the facts as the trial court found them, have acted differently than did respondent, there is no basis to attach legal fault to his conduct.

Appellants not having produced evidence of the standard of care applicable to respondent's performance of specialized legal services or that his performance was inadequate, the trial court's determination that appellants failed in their burden of proof is sustained by the record.

### Disposition

The judgment is affirmed.

Wood, P. J., and Hanson, J., concurred.

A petition for a rehearing was denied May 28, 1975, and appellants' petition for a hearing by the Supreme Court was denied June 26, 1975.