[Civ. No. 57885. Second Dist., Div. Five. Mar. 9, 1981.]

ROBERT WILKINSON et al., Plaintiffs and Appellants, v.
JAMES B. RIVES et al., Defendants and Respondents.

**COUNSEL**

Saul J. Bernard for Plaintiffs and Appellants.

Kean, Engle & Cervenak, Robert W. Engle, Greenberg & Glusker, William A. Halama and James E. Hornstein for Defendants and Respondents.

OPINION

**OLDER, J.\***—The Wilkinsons appeal from an adverse judgment in their action for damages based upon the alleged negligence of respondents.

This action arises out of a declaration of homestead recorded on the real property located in Los Angeles County occupied by appellants as their residence. The declaration was prepared by respondent James B. Rives, an attorney at law, was signed and acknowledged by appellants on September 18, 1968, and duly recorded on September 20, 1968. The declaration did not contain the optional affidavit provided for in Civil Code section 1263, subdivision 4.

In 1967 both a first deed of trust and a second deed of trust were executed by appellants, securing indebtedness in the amounts of $51,000 and $7,950, respectively, and were duly recorded against the subject property. A notice of default under the second deed of trust was recorded on April 30, 1975, and a notice of default under the first deed of trust was recorded on August 22, 1975.

After the declaration of homestead was recorded in 1968, abstracts of judgment representing 14 separate judgments, together with 3 federal and state liens, were recorded in Los Angeles County, showing one or both of the appellants as the judgment or lien debtor. The judgments totalled $47,608.81 and the liens totalled $3,833.89. With respect to one of the judgments the Los Angeles County Marshal had levied a writ of execution on the subject real property and had noticed a marshal's sale for July 22, 1975. The amount required to satisfy that judgment was $3,891.64.

On June 16, 1975, appellants entered into an agreement to sell the subject real property for the sum of $90,000. An escrow was opened and a preliminary title report was obtained from respondent California Land Title Company (hereinafter CLTC).[1] The title report disclosed in addition to the two deeds of trust the fourteen judgments and three liens referred to above. CLTC declined to issue a policy of title insur-

---

\*Assigned by the Chairperson of the Judicial Council.

[1] The escrow instructions provide that the property to be conveyed by appellants to the new buyers shall be free of all encumbrances except current taxes, a provision in a standard clause relating to conditions, covenants, restrictions, etc., and a first deed of trust to file, securing a note for not less than $59,500, to be obtained by buyer.

ance without an exception showing the property subject to the effect of appellants' recorded declaration of homestead, and further declined to eliminate from any policy of title insurance the various judgments and liens due to an apparent equity in excess of the homestead exemption limit. In 1975 the homestead exemption was $20,000.

When appellants were informed of the position of respondent CLTC regarding a policy of title insurance on the subject property, they consulted their present counsel during the escrow period and were advised by him that after the escrow closed appellants should bring the closing statement to counsel.

Appellants negotiated settlements with the various judgment and lien creditors and directed the escrow holder to pay the amounts agreed upon. The escrow holder paid out of escrow the total amount of $24,354.50 in satisfaction of the various liens. Releases and satisfactions of judgment were obtained from all of the creditors. Appellants received upon close of escrow the net amount of $3,193 for the sale of the subject real property.

■ Appellants first contend that respondent Rives prepared an invalid declaration of homestead as a result of which appellants lost their homestead exemption. The contention has no merit for two reasons: (1) the declaration was duly and properly signed, acknowledged and recorded, thus creating a valid homestead exemption,[2] and (2) appellants never lost their homestead exemption.

Appellants base their contention regarding the invalidity of the declaration on the fact that it did not contain the optional[3] affidavit provided for in Civil Code section 1263, subdivision 4.[4] When the declaration does contain the optional affidavit, properly verified by the declarant, the statute provides that the further statement contained therein shall be prima facie evidence of the facts therein stated, and conclusive evidence thereof in favor of a purchaser or encumbrancer in good faith and for a valuable consideration. (Civ. Code, § 1263, subd.

---

[2] Civil Code sections 1262, 1266 and 1269.

[3] "Inclusion of the statement and affidavit ... is optional with the declarant." (1 Ogden's Rev. Cal. Real Property Law (1974) § 9.15.)

[4] At the time appellants' declaration of homestead was recorded in 1968, the optional affidavit was provided for in subdivision 5 of Civil Code section 1263.

4.) The presence or absence of the optional affidavit in no way affects the validity of the declaration of homestead or the homestead exemption, but merely pertains to certain evidentiary presumptions that arise when the optional affidavit, properly verified, is included in the declaration. The evidence discloses in the instant case that the declaration conforms in all respects with the statutory requirements. Moreover, had there been any defect, omission or informality in the execution of the declaration of homestead, or in the certificate of acknowledgement thereof, or in the absence of any such certificate, the declaration, insofar as it purports to impart notice of its contents to subsequent purchasers and encumbrancers, would have been saved by the provisions of Civil Code section 1207. (*Thomas* v. *Speck* (1941) 47 Cal.App.2d 512 [118 P.2d 365], hg. den.) However, there was no such defect, omission or informality.

 When a valid declaration of homestead is properly recorded, the homestead is exempt from execution or forced sale, except as provided in the statute. (Civ. Code, §§ 1240, 1241; *Yager* v. *Yager* (1936) 7 Cal.2d 213 [60 P.2d 422, 106 A.L.R. 664].) For reasons best known to appellants they never asserted their homestead exemption as against the various judgments and liens disclosed in the preliminary title report, but instead elected to negotiate and settle with the judgment creditors outside of escrow.

 No expert testimony was elicited at the trial warranting a finding by the trial court that respondent Rives was negligent in failing to have appellants sign and verify the optional affidavit attached to the declaration of homestead. In *Kirsch* v. *Duryea* (1978) 21 Cal.3d 303, at page 308 [146 Cal.Rptr. 218, 578 P.2d 935], the court states: "'The general rule with respect to the liability of an attorney for failure to properly perform his duties to his client is that the attorney, by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. . . .'" The issue of attorney malpractice is in essence a question of fact similar to that involved in other professional negligence. (*Wright* v. *Williams* (1975) 47 Cal.App.3d 802 [121 Cal.Rptr. 194].) Expert testimony is admissible to establish the standard of care applicable to a lawyer in the performance of the work for which he was engaged by the client, and to establish whether he has performed to the standard. Where the failure of attor-

ney performance is so clear that a trier of fact may find professional negligence unassisted by expert testimony, then expert testimony is not required. (*Wright* v. *Williams, supra.*) The instant case is not of that character.[5] Whether an attorney in the exercise of due care in preparing for his client a declaration of homestead should have the client sign and verify the optional affidavit is not a matter of common knowledge. As we have seen, the optional affidavit has no effect on an otherwise valid declaration except with regard to certain evidentiary presumptions. Whether the failure of the attorney to obtain for his client the benefit of those presumptions is malpractice requires expert testimony on the standard of care and the attorney's performance in relation to that standard.[6] Since there was no such expert testimoney, there is no evidence from which the trier of fact could have found negligence on the part of respondent Rives.

In view of the conclusion reached, it is unnecessary to consider appellants' contention that the omission of the optional affidavit was a proximate cause of the loss of their homestead exemption. In any event the exemption was never lost.

Appellants proceeded to trial against CLTC on two theories. Appellants first contended that CLTC was negligent in advising appellants that their declaration of homestead was invalid, and that appellants relied on that advice to their damage. Appellants' second contention was that CLTC negligently advised appellants that the judgments and liens against the property would have to be satisfied before CLTC would issue a policy of title insurance and that appellants relied on that advice to their damage.

 The trial court granted CLTC's motion for judgment at the close of appellants' case. The trial court found that neither CLTC or Jack Harris (the title officer for CLTC) at any time expressed any ad-

---

[5]" ... in the field of legal construction of instruments affecting land, there is room for great divergence of opinion, sometimes engendering uncertainty as to title." (2 Ogden's Rev. Cal. Real Property Law, § 30.1.)

[6]As a rule of title practice a money judgment may be ignored "when the declaration meets statutory requirements, is recorded before the abstract of judgment, and contains the verified statements prescribed in Civil Code section 1263, subdivision 4, *provided* (1) investigation shows that the improvements are of the character contemplated by the statute, and (2) the equity in the property is not substantially in excess of the statutory exemption." (Italics added.) (1 Ogden's Rev. Cal. Real Property Law, § 9.23.)

vice or opinion to anyone concerning the validity of appellants' declaration of homestead, including any opinion as to the legal effect of the declaration without the optional affidavit provided for in Civil Code section 1263, subdivision 4; that neither appellants or any agent of theirs ever sought any such advice or opinion from either CLTC or Harris; that prior to the close of escrow appellants consulted Attorney Saul J. Bernard regarding the validity of the declaration of homestead, and what action, if any, appellants should take with respect to the recorded judgments and liens and in closing the escrow; that neither appellants or any agent of theirs ever made any request to CLTC or Harris to bond any or all of the judgments or liens recorded against the subject property; and that appellants did not in any event rely on any advice or opinion given them by CLTC or Harris, but on the contrary relied solely on their own attorney for guidance regarding the declaration of homestead and the closing of escrow. Appellants challenge the sufficiency of the evidence to support the trial court's findings.

The testimony of the title officer, Harris, was that as a matter of title practice CLTC would not issue a policy of title insurance where a declaration of homestead had been recorded, but the optional affidavit was not contained in the declaration, unless all recorded judgments and other liens were shown as exceptions to the coverage provided. Harris testified further that he does not pass on the validity of a declaration of homestead or express any opinion as to its validity, and that he did not do so in this case.[7] He further testified that CLTC does not advise people to "clear" judgments; that where judgments and liens of record appear, CLTC informs interested parties that a policy of title insurance will not be issued unless such judgments and liens are shown as exceptions, and that the escrow officer was so informed by him in this case.

The escrow officer, Julia Hunter, confirmed Harris' testimony as to what he had told her. She testified that Harris informed her that CLTC refused to pass upon the validity of the declaration of homestead and made a title decision not to risk possible litigation by issuing a policy of title insurance without showing the judgments and liens as exceptions. Appellant Wilkinson testified that he never communicated with CLTC

---

[7] As a general rule of title practice, the title examiner is not concerned with the sufficiency or insufficiency of the form of the homestead declaration. Finding the declaration in the chain of title, he reports title subject to its effect and passes on matters in the chain according to their legal effect if the homestead is valid or invalid, with the title report embracing all contingencies under either view. (1 Ogden's Rev. Cal. Real Property Law, § 9.16.)

regarding the declaration of homestead, and that he relied entirely on statements attributed to CLTC by the escrow officer, Hunter.

■ When a title insurer furnishes a preliminary title report to a prospective buyer, the insurer serves as an abstractor of title and has a duty to list all matters of public record regarding the subject property in its preliminary report. (*Jarchow* v. *Transamerica Title Insurance Co.* (1975) 48 Cal.App.3d 917 [122 Cal.Rptr. 470].) Appellants do not contend that the preliminary title report failed to list any matter of public record regarding the property, and the trial court found that the report was complete and accurate. Appellants, however, contend in their brief that CLTC had a duty to give them legal advice regarding the validity of their declaration of homestead. Appellants seem to be saying in their brief that because CLTC declined to insure without showing the judgments and other liens as exceptions, appellants were misled into believing that their homestead exemption had been lost; that under such circumstances CLTC owed them a duty to give them a legal opinion to the effect that the homestead exemption was still viable; and that as a consequence of being so misled, appellants were required to settle with their creditors. There is no merit to appellants' contentions.

CLTC had no duty to give a legal opinion to appellants concerning the title to the subject property, and in fact was prohibited from doing so.[8] (*Banville* v. *Schmidt* (1974) 37 Cal.App.3d 92 [112 Cal.Rptr. 126]; *Jarchow* v. *Transamerica Title Insurance Co., supra,* 48 Cal.App.3d 917; 2 Ogden's Rev. Cal. Real Property Law, §§ 30.1-30.26.) Appellants' reliance on section 552 of the Restatement Second of Torts is misplaced for the reasons that the evidence fails to show that CLTC furnished to appellants an inaccurate or incomplete title report or that appellants relied on any statement of CLTC regarding their homestead exemption. On the contrary the evidence shows that appellants consulted with and relied on the advice of their own counsel before settling

---

[8]See *Agreement Between The State Bar of California and The California Land Title Association* (1966) 41 State Bar J. 156.) Under the treaty the member companies cannot give legal advice or draft legal instruments for third parties as part of the procedure of issuing a title policy or providing evidence of title. If parties are uncertain about their legal rights and obligations, title companies must advise them to see an attorney. The treaty permits title insurance companies to explain to customers the conditions on which title policies will be issued. Although the agreement between the State Bar and the title companies has been terminated, it was apparently still in effect at all times relevant to the instant case. (Cal. Real Estate Sales Transactions (Cont.Ed. Bar Supp. 1980) § 17.6.)

with their creditors. The trial court's findings are amply supported by the evidence.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.