DUFFEY LAW OFFICE, S.C., Plaintiff-Respondent,

v.

TANK TRANSPORT, INC., Defendant-Appellant.

Court of Appeals

*No. 94–1278. Oral argument April 5, 1995.—Decided May 16, 1995.*

(Also reported in 535 N.W.2d 91.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John Theiler Bode* and *Brian E. Running* of *Bode, Schroeder, Carroll & Murn,*

*S.C.*, of Waukesha, Wisconsin. There was oral argument by *John Theiler Bode*.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *Terry E. Johnson* and *Dan J. Gendreau* of *Peterson, Johnson & Murray, S.C.*, of Milwaukee. There was oral argument by *Terry E. Johnson* and *Joseph P. Duffey*.

Before Fine, Schudson and Myse, JJ.

FINE, J.   This is an appeal from a judgment awarding to Duffey Law Office, S.C., attorney's fees in connection with its representation of Tank Transport, Inc., and dismissing Tank Transport's counterclaim against the Duffey firm for legal malpractice. The pivotal issue in this case is whether an attorney who represents to a client that the attorney has expertise greater than that of the average Wisconsin lawyer is to be held to a standard of professional care that is consistent with that claimed expertise. We conclude that the answer to this question is "yes," and remand this case because it is not clear whether the trial court applied this standard.

## I.

Tank Transport is a Wisconsin trucking company. From an effective date of November 15, 1985, through May 14, 1992, collective bargaining agreements between Tank Transport and Local 200 of the Teamsters union required the company to contribute to the Central States, Southeast and Southwest Areas Pension Fund $13 "for each day worked by a regular employee covered by [the agreements] who has been on the payroll" thirty days or more. The agreements covered "the truck drivers assigned to and working out of

676

[Tank Transport]'s Milwaukee, Wisconsin facility who are employed by Tank [Transport] in connection" with the company's "transportation of commodities hauled in tank trailers" over routes assigned to the company.

On September 16, 1987, in an apparent attempt by Tank Transport to compete more efficiently with non-union trucking companies, Tank Transport and Local 200 agreed that employees hired by the company after October 26, 1987, would be covered by a supplemental collective bargaining agreement, which purported to absolve Tank Transport from having to make contributions to the Central States pension fund for those employees, and substituted for them a pension plan authorized by section 401(k) of the Internal Revenue Code. The employees hired after October 26, 1987, and therefore covered by the supplemental collective bargaining agreement, however, had the same duties as those hired before that date.

Contrary to the Central States pension fund trust agreement, which required employers to send to the pension fund "each new or successive collective bargaining agreement" as well as any "agreement or understanding . . . that in any way alters or affects the Employer's contribution obligation as set forth in the collective bargaining agreement," Tank Transport did not submit to the fund a copy of either the supplemental collective bargaining agreement or the concurrently executed memorandum of understanding between the union and the company.

The architect of the arrangement between Tank Transport and Local 200 for Tank Transport to avoid making payments to the Central States pension fund for those employees hired after October 26, 1987, was Thomas J. Duffey, Esq., a shareholder in Duffey Law Offices. The trial court found that Mr. Duffey "held

677

himself out to be and was, in fact, an expert lawyer in the field of labor law, collective bargaining agreements and pension fund contribution." Indeed, Mr. Duffey had served as trustee of the Central States pension fund from 1962 to 1976. He had also negotiated similar "supplemental" collective bargaining agreements on behalf of other employers before he was retained by Tank Transport for that purpose. The agreement he negotiated for Tank Transport, however, blew up when the Central States pension fund discovered the two-tier arrangement during its audit of Tank Transport in 1990, and sued Tank Transport in federal court to recover pension-fund contributions on behalf of the employees hired after October 26, 1987. *See* 29 U.S.C. 1132. The district court found that the post-October 26, 1987, hirees were covered by the main collective bargaining agreement, and thus, under 29 U.S.C. 1145, Tank Transport was required to make contributions to the Central States pension fund on their behalf. *Central States, Southeast and Southwest Areas Pension Fund v. Tank Transport, Inc.*, 1993 WL 369331 (N.D. Ill. 1993). The court awarded to the Central States pension fund a total judgment of $245,397.56, which included the unpaid but required contributions to the fund, double interest on those unpaid contributions, and attorney's fees.

Prior to the decision by the United States district court in *Tank Transport*, Mr. Duffey represented Tank Transport and was able to get the company's dispute with the Central States pension fund referred to arbitration. He also prepared Tank Transport's presentation to the arbitrators. The arbitrators ruled that, contrary to the position taken by the Central States pension fund, and contrary to what the district court would later decide, Tank Transport did not have

to make any additional contributions to the fund on behalf of those employees who were hired after October 26, 1987. The dispute ultimately returned to federal court, and Mr. Duffey withdrew as Tank Transport's lawyer shortly thereafter. As we have already seen, the court ruled in the fund's favor.

This action was started by Duffey's law firm, which sought payment for its representation of Tank Transport. Tank Transport counterclaimed, alleging that Mr. Duffey committed legal malpractice. The case was tried to the court. Proposed findings of fact and conclusions of law were submitted to the trial court by each party. Tank Transport argued that the trial court should hold Mr. Duffey to that "degree of knowledge, care, skill, ability and diligence required of lawyers engaged in the practice of law and working in the field of labor collective bargaining agreements." The Duffey firm, borrowing from the language of the applicable pattern jury instruction, asked the trial court to conclude that Mr. Duffey "exercised that degree of knowledge, care, skill, ability and diligence usually possessed and exercised by attorneys under similar circumstances."[1] The trial court upheld the law firm's

---

[1] WISCONSIN J I—CIVIL 1023.5 provides, as relevant to this appeal:

It is a lawyer's duty, in rendering legal services to a client, to exercise that degree of care, skill, and judgment which is usually exercised under like or similar circumstances by lawyers licensed to practice in this state.

. . . .

In discharging the duty of reasonable care, a lawyer is required to exercise that degree of knowledge, care, skill, ability and diligence usually possessed and exercised by members of his or her profession engaged in the practice of law in this state. Whether (lawyer) has failed to exercise reasonable care in representing (plaintiff) is to be determined by you in light of all of the surrounding facts and circumstances of which (lawyer) was aware or should

claim for attorney's fees and dismissed Tank Transport's claim against the firm.

As required by RULE 805.17(2), STATS., the trial court issued findings of fact and conclusions of law. As noted, it found as a fact that Duffey "held himself out to be and was, in fact, an expert lawyer in the field of labor law, collective bargaining agreements and pension fund contribution." Additionally, the trial court, in a paragraph denominated as a "conclusion of law," determined that "Duffey, as an expert in this specific area of the law, reasonably and sufficiently informed Tank of risks inherent in the [two-tier] plan." Nevertheless, in the conclusion-of-law paragraph that immediately follows, the trial court appears to have applied a lesser, generalist's, standard: "That based on the State [*sic*] of the Law [*sic*] at the time, Duffey exercised the degree of knowledge, care, skill, ability and diligence usually possessed and exercised by lawyers engaged in the practice of law in this state."

## II.

The question of what standard of care applies in a legal malpractice action has never been addressed directly by an appellate decision in this state where that issue was potentially dispositive.[2] In its most

have discovered by the use of the reasonable care and skill of a lawyer at that time. However, a lawyer is not required to guarantee results in representing a client. Whether a lawyer has discharged the lawyer's duty under the facts of a particular case depends upon the nature and scope and purpose for which the lawyer is retained. The nature and scope for which the lawyer has been retained is for you, the jury, to determine.

[2] Although the case was decided on other issues, a legal-malpractice complaint in *Boehm v. Wheeler*, 65 Wis. 2d 668, 223 N.W.2d 536 (1974), which concerned a claim that patent lawyers negligently failed to file timely a patent application,

recent examination, however, the supreme court recognized that an " 'attorney must be held to undertake to use a reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession,' " and "is bound to exercise his best judgment in light of his education and experience." *Helmbrecht v. St. Paul Ins. Co.*, 122 Wis. 2d 94, 111, 362 N.W.2d 118, 128 (1985) (citations and internal quotes omitted).[3]

alleged that the "plaintiffs relied on the high standard of skill and expertise the defendants represented they had in the field of patent law." *Id.*, 65 Wis. 2d at 671–672, 223 N.W.2d at 537–538 (complaint paraphrased by *Boehm*). On oral argument in this case, counsel for Duffey's firm on the malpractice issue (as opposed to the attorney's fees issue) conceded that he tried the case as if the higher standard of care applied—even though he contends that attorneys, irrespective of their claimed expertise, must adhere to a standard of care that reflects only the knowledge and abilities of the average Wisconsin lawyer.

[3] The first appellate reference in Wisconsin to the appropriate standard of care was in *Malone v. Gerth*, 100 Wis. 166, 75 N.W. 972 (1898), where a client alleged that her lawyers were negligent in connection with a foreclosure matter for which she had retained them. *Id.*, 100 Wis. at 167, 75 N.W. at 972. *Malone* approved the following jury instruction as "sufficiently full and accurate to meet the requirements of the case," *id.*, 100 Wis. at 174, 75 N.W. at 975:

> "[A]n attorney must be held to undertake to use a reasonable degree of care and skill, and to possess to a reasonable extent the knowledge requisite to a proper performance of the duties of his profession, and, if injury results to the client as a proximate consequence of the lack of such knowledge or skill, or from the failure to exercise it, the client may recover damages to the extent of the injury sustained; but we are all human beings, and attorneys are not responsible for errors and mistakes that they make. If an attorney is fairly capacitated to discharge the duties ordinarily incumbent upon one of his profession, and acts with a proper degree of attention, and with reasonable care, and to the best of his

681

The practice of law, as with most professions, has become increasingly specialized—in tandem with the growing complexity of society and commerce. Although the Wisconsin Rules of Professional Conduct for Attorneys prohibits lawyers from stating or implying "that the lawyer is a specialist" except for those lawyers practicing admiralty law or those who are admitted to practice before the United States Patent and Trademark Office, SCR 20:7.4, 139 Wis. 2d at cv, many lawyers do, in fact, specialize and limit their areas of practice.[4] Indeed, the enforceability of this provision

---

skill, he will not be responsible. He must, of course, act toward his client with integrity and honesty."

*Id.*, 100 Wis. at 173–174, 75 N.W. at 974. Subsequently, *Denzer v. Rouse*, 48 Wis. 2d 528, 534, 180 N.W.2d 521, 525 (1970), recognized, without extensive discussion or analysis, that although an attorney's judgment need not be infallible, it must be exercised "in the light of his education and experience."

[4] SCR 20:7.4 provides:

### Communication of Fields of Practice

A lawyer may communicate the fact that the lawyer does or does not practice in particular fields of law. A lawyer shall not state or imply that the lawyer is a specialist except as follows:

(a) a lawyer admitted to engage in patent practice before the United States Patent and Trademark Office may use the designation "patent attorney" or a substantially similar designation; and

(b) a lawyer engaged in admiralty practice may use the designation "admiralty," "proctor in admiralty" or a substantially similar designation.

### COMMENT

This rule permits a lawyer to indicate areas of practice in communications about the lawyer's services; for example, in a telephone directory or other advertising. If a lawyer practices only in certain fields, or will not accept matters except in such fields, the lawyer is permitted so to indicate. However, stating that the lawyer is a "specialist" or that the lawyer's practice "is limited to" or "concentrated in" particular fields is not permitted. These terms

682

insofar as it purports to prohibit statements of fact that are truthful and not misleading has been put into doubt by *Peel v. Attorney Registration and Disciplinary Comm'n*, 496 U.S. 91 (1990). Moreover, the comment to SCR 20:7.4 notes that the rule "permits a lawyer to indicate areas of practice in communications about the lawyer's services," as well as whether he or she "practices only in certain fields, or will not accept matters except in such fields." 139 Wis. 2d at cv.[5] This comports with the reality of modern-day legal practice, and serves the public interest: relatively few lawyers, for example, are competent to decipher and apply the myriad interrelated provisions of the federal and state tax codes, and few lawyers who specialize in tax matters would be competent to try a complex personal-injury action or a capital-murder case.

have acquired a secondary meaning implying formal recognition as a specialist. Hence, use of these terms may be misleading unless the lawyer is certified or recognized in accordance with procedures in the state where the lawyer is licensed to practice.

Recognition of specialization in patent matters is a matter of long established policy of the Patent and Trademark Office. Designation of admiralty practice has a long historical tradition associated with maritime commerce and the federal courts.

139 Wis. 2d at cv.

[5] According to the comment, however, a lawyer in Wisconsin may not state "that the lawyer is a 'specialist' or that the lawyer's practice 'is limited to' or 'concentrated in' particular fields." SCR 20:7.4, Comment, 139 Wis. 2d at cv. We do not perceive the substantive difference between stating that one "practices only in certain fields" and "will not accept matters except in such fields," which, according to the comment, is permitted by SCR:7.4, and stating that one's practice " 'is limited to' or 'concentrated in' " certain fields, which, according to the comment, is not permitted by SCR:7.4.

> Specialization raises the question whether the standard of care devised for the "ordinary" attorney suffices for the practice of law in modern time. The answer, with increasing frequency, is that an attorney undertaking a task in a specialized area of the law must exercise the degree of skill and knowledge possessed by those attorneys who practice in that specialty.

1 RONALD E. MALLEN & JEFFREY M. SMITH, LEGAL MALPRACTICE § 15.4 at 864 (1989). Indeed, the treatise reports that "[n]o court has rejected the concept that a more demanding standard of care should be applied to specialists." *Id.* at 867. Application of this heightened standard of care was recently recognized in *Transcraft, Inc. v. Galvin, Stalmack, Kirschner & Clark*, 39 F.3d 812, 815 (7th Cir. 1994). *See also Rodriguez v. Horton*, 622 P.2d 261, 264 (N.M. Ct. App. 1980) ("A lawyer holding himself out to the public as specializing in an area of the law must exercise the same skill as other specialists of ordinary ability specializing in the same field.") (New Mexico officially adopted legal specialization rules in 1989); *Rhodes v. Batilla*, 848 S.W.2d 833, 842–843 (Tex. Ct. App. 1993) (applying heightened standard of care to "one who holds himself out as an expert or specialist") (Texas has officially recognized and certified legal specialists since 1975); *Bent v. Green*, 466 A.2d. 322, 325 (Conn. App. Ct. 1983) (An attorney has duty to exercise "the same degree of care, skill and diligence which other attorneys . . . in the same line of practice would have exercised in similar circumstances.") (also applying a locality rule); *cf. Battle v. Thornton*, 646 A.2d 315, 323 (D.C. App. 1994) (an attorney held to generalist's standard of care unless the attorney "affirmatively represented" that he or she was a specialist).

As we have already seen, the general rule in Wisconsin is that an attorney "is bound to exercise his best judgment in light of his education and experience." *Helmbrecht*, 122 Wis. 2d at 111, 362 N.W.2d at 128. By the same token, the pattern jury instruction designed for use in legal malpractice cases advises trial courts to instruct juries that lawyers are expected to "exercise that degree of care, skill, judgment which is usually exercised *under like or similar circumstances* by lawyers licensed to practice in this state," and that whether a lawyer has discharged his or her duty under this standard "depends upon the *nature and scope and purpose for which the lawyer is retained*." WIS J I—CIVIL 1023.5 (emphasis added). *Wright v. Williams*, 121 Cal. Rptr. 194 (Cal. Ct. App. 1975), held that similar language in the development of legal-malpractice standards in California warranted application of the higher standard to those lawyers who claim special expertise:

> Our Supreme Court has approved a jury instruction phrasing the lawyer's duty as that of members of the profession under similar circumstances. One who holds himself out as a legal specialist performs in similar circumstances to other specialists but not to general practitioners of the law. We thus conclude that a lawyer holding himself out to the public and the profession as specializing in an area of the law must exercise the skill, prudence, and diligence exercised by other specialists of ordinary skill and capacity specializing in the same field.

*Id.*, 121 Cal. Rptr. at 199 (citation omitted).[6] We agree. Physicians and dentists are held to the standards of "the class" to which they belong. *Shier v. Freedman*, 58 Wis. 2d 269, 283–284, 206 N.W.2d 166, 174, *modified on other grounds,* 208 N.W.2d 328 (1973). We see no principled reason why a different rule should apply to lawyers; it would be anomalous to permit a self-proclaimed tax specialist to escape liability for his or her professional negligence in failing to advise properly on a complex matter of tax law merely because an attorney not claiming such expertise would have also given faulty advice.

■

It is uncontested here, and the trial court so found, that Mr. Duffey presented himself as an expert in the areas of labor law, collective bargaining agreements, and pension-fund contribution law. He thus should be held to a standard of care that is consistent with that representation.[7]

---

[6] California has officially recognized and certified legal specialists since 1985, and, in a pilot program, since 1970.

[7] Following the stricture that cases should be decided on the narrowest possible grounds, *State v. Blalock,* 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989), we do not consider whether a standard of care applicable to those who claim expertise in an area of the law greater than that of the average lawyer would be appropriate absent such an express representation. *See Battle v. Thornton,* 646 A.2d 315, 323 (D.C. 1994) (absent express representation that he or she has specialized expertise, lawyer is held to the generalist's standard of care "coupled with the requirement that the particular attorney have the necessary training and experience to handle the particular case") (criminal defense lawyer defending a Medicaid-fraud case was properly held to a criminal-defense lawyer's standard of care because he did not claim special expertise in Medicaid-fraud cases). Unlike some other states, Wisconsin does not certify

We are unable to determine from the trial court's decision whether it applied a generalist's or a specialist's standard in holding that Mr. Duffey was not guilty of legal malpractice. Inasmuch as the issue of whether the Duffey law firm is entitled to any or all of the fees that were awarded to it by the trial court depends on whether Mr.. Duffey negligently represented Tank Transport, we reverse the judgment and remand to the trial court with the following directions: (1) the trial court is to determine, in light of this opinion, whether it applied the appropriate standard of care; (2) if the trial court determines that it did apply the appropriate standard of care in light of this opinion, the trial court is to issue revised findings of fact and conclusions of law, and enter the appropriate judgment; (3) if the trial court determines that it applied a generalist's standard of care, it shall either issue revised findings of fact and conclusions of law consistent with this opinion, or, in the alternative, grant to the parties a new trial.

---

specialties in the practice of law. Indeed, as we have already seen, a lawyer in Wisconsin may not claim to be a "specialist." Although the Rules of Professional Conduct for Attorneys, SCR Chapter 20, 139 Wis. 2d xviii, "are not designed to be a basis for civil liability," *id.*, Preamble: A Lawyer's Responsibilities, 139 Wis. 2d at xxii; *Peck v. Meda-Care Ambulance Corp.*, 156 Wis. 2d 662, 669 & n.4, 457 N.W.2d 538, 541 & n.4 (Ct. App. 1990), a lawyer may not ethically handle a matter for which he or she is not competent, SCR 20:1.1, 139 Wis. 2d at xxiii–xxv. Nevertheless, a lawyer may be guilty of malpractice if he or she attempts to do so. *Cf. Johnson v. Agoncillo*, 183 Wis. 2d 143, 152, 515 N.W.2d 508, 512 (Ct. App. 1994) (a generalist can be liable for negligence if he or she does not refer to a specialist a matter beyond the generalist's competence) (medical malpractice).

687

*By the Court.*—Judgment reversed and cause remanded with directions.