Filed 7/31/14  Straass v. DeSantis CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| KAREN STRAASS et al., | D064040 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2011-00077448-CU-PO-SC) |
| FRANK DeSANTIS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Lawrence Wasserman for Plaintiffs and Appellants.

Wilson, Elser, Moskowitz, Edelman & Dicker, Robert W. Harrison and Patrick J. Kearns, for Defendants and Respondents.

Plaintiffs Karen and Mark Straass appeal a judgment in favor of defendants Frank DeSantis, Valorie Ryan, and the Law Offices of Frank DeSantis (together, DeSantis) after the court granted DeSantis's summary judgment motion on the Straasses' complaint for legal malpractice and related claims arising from DeSantis's handling of a medical

malpractice case. DeSantis's summary judgment motion rested on two primary grounds: first, the Straasses had not designated a qualified legal expert witness to opine on the standard of care and other issues essential to their claims; and second, the Straasses could not establish damages as a result of DeSantis's alleged legal malpractice and other wrongful conduct. The trial court granted DeSantis's motion on both grounds.

The Straasses designated Lawrence Wasserman, who was also their counsel of record, as their legal expert witness. For reasons we shall explain, Wasserman was unqualified to render an expert opinion on the specific instances of alleged malpractice based on his lack of experience handing medical malpractice cases. Because the Straasses' claims require expert testimony, and the Straasses did not identify a qualified expert witness to support their claims, the trial court did not err in granting DeSantis's summary judgment motion. We therefore affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2009, Mark Straass retained DeSantis to represent him in connection with a personal injury claim against Kaiser Foundation Hospitals. The claim arose from gallbladder surgery that Mark underwent more than two years earlier.[1] Mark, represented by DeSantis, later filed a demand for arbitration against various Kaiser entities and the doctor responsible for the surgery (together, Kaiser). The arbitration demand alleged that Kaiser improperly performed the surgery by failing to remove surgical clips from Mark's body when the surgery was completed. Following the surgery,

---

[1] To avoid confusion, we will refer to the Straasses by their first names where necessary.

2

Mark made repeated visits to Kaiser to treat various symptoms, including back and side pain, elevated white blood cell counts, and a lump on his back of increasing size. An X-ray later revealed that the surgical clips had migrated to his back. Mark suffered a severe infection. Mark subsequently had surgery to remove the clips and repair the damage to his back caused by the infection. Mark's arbitration demand alleged that Kaiser was professionally negligent in performing Mark's gallbladder surgery and by failing to find and diagnose Mark's severe infection. Mark sought general and specific damages in unspecified amounts.

Approximately six weeks later, DeSantis sent Kaiser a demand for settlement. The settlement demand recounted Kaiser's alleged negligence and detailed various categories of damages Mark claimed. These categories included medical bills, lost wages, and lost pension benefits. DeSantis's settlement demand further noted "there has been a loss of consortium." The total damages Mark claimed exceeded $1.25 million. The settlement demand offered to resolve the matter for $650,000. Kaiser responded, disputing liability and offering no monetary settlement.

Mark was deposed in the Kaiser arbitration. During his deposition, Mark testified that he felt the surgical clips "cutting" him during abdominal exercises soon after the gallbladder surgery. Mark said he knew at that point that the clips were causing him injury.

Three weeks later, DeSantis sent Mark a letter stating that "[a]fter extensive work on your case, given the facts surrounding the case, I have come to the conclusion that this office will no longer be able to represent you with regards to this case." DeSantis's letter

3

asked Mark to sign a substitution of counsel form and informed him that DeSantis would file a motion to withdraw if he did not. With its letter, DeSantis enclosed an offer to compromise from Kaiser under Code of Civil Procedure section 998. Kaiser offered to waive costs if Mark dismissed his claims with prejudice. DeSantis encouraged Mark to seek other counsel if he chose to continue pursuing his claims against Kaiser. Mark signed the substitution form and proceeded in propria persona against Kaiser.

Kaiser then filed a motion for summary judgment, arguing among other things that Mark's claim based on alleged negligence during his gallbladder surgery was barred by the applicable statute of limitations. Kaiser contended Mark's deposition testimony showed that he knew of his injury soon after the surgery. In Kaiser's view, Mark should have filed suit within one year of that time. (See Code Civ. Proc., § 340.5 [action must be commenced within "one year after the plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the injury"].)

While Kaiser's motion was pending, Mark contacted Wasserman to represent him in the Kaiser arbitration. Mark's aunt, Sonia Breedlove, was a former legal secretary to Wasserman. Although Wasserman told Breedlove and the Straasses that he "was not seeking new cases, [he] had never done a medical malpractice case, [he] did not want to do a medical malpractice case and was trying to fully retire as an attorney," Wasserman agreed to represent Mark on an interim basis and help the Straasses secure an attorney that specialized in medical malpractice.

4

Wasserman was never able to find a medical malpractice specialist to represent Mark. Karen Straass said that Wasserman told the Straasses he " 'was stuck with' " them. Wasserman has not maintained an office for the practice of law since 1996.

Mark, represented by Wasserman, filed a motion to continue the summary judgment hearing and the arbitration hearing, which the court granted. Mark then filed an amended demand for arbitration. The amended demand named as additional respondents several Kaiser doctors involved in Mark's treatment following his gallbladder surgery. The additional respondents were substituted for "Doe" respondents named in the original arbitration demand. Mark also added a number of additional allegations of professional negligence, including Kaiser's failure to adequately identify and treat an infection associated with antibiotic resistant bacteria, *Enterobacter cloacae*, in the weeks prior to Mark's gallbladder surgery. The amended demand for arbitration alleged that Kaiser's failure to treat the bacteria led to Mark's subsequent back infection. Mark also added claims for ordinary negligence against the Kaiser corporate respondents. Mark subsequently designated two medical experts, Dr. Graham Woolf and Dr. Richard Socolov, and a damages expert.

Mark, still represented by Wasserman, eventually dismissed his claims against Kaiser with prejudice right before the arbitration hearing. Karen Straass explained that "[j]ust before the Arbitration hearing date Mr. Wasserman told us that he did not feel he was adequately prepared for the arbitration and was going to dismiss the case." As Wasserman wrote to a colleague, "Lawrence Wasserman (me) prepared the case. In concentrating on liability I neglected to brief my expert witness on causation or damages.

5

He emphatically stated during his deposition that he had not been retained to render an opinion on that. Kaiser made a motion to exclude evidence of causation. I dismissed the case on the eve of the hearing." Wasserman had been representing the Straasses for almost eight months by the time of the scheduled arbitration hearing.

Wasserman told the Straasses that "there was likely an action against Mr. DeSantis for legal malpractice and [they] should continue looking for legal representation. [Wasserman] told [the Straasses] that if [they] got a new attorney they might want to consider whether Mr. Wasserman had been negligent" as well. The Straasses were unable to find an attorney to represent them in connection with these potential legal malpractice claims. The Straasses thus filed a complaint against DeSantis in propria persona with the assistance of Wasserman. After DeSantis demurred to the complaint, Wasserman appeared as the Straasses' counsel in this action as well. Karen stated that Wasserman "again indicated that he was stuck with representing us."

The operative verified second amended complaint (SAC) alleged three causes of action against DeSantis: legal malpractice, failure to advise of action for loss of consortium, and breach of fiduciary duty. The legal malpractice claim, alleged on behalf of Mark only, contained 13 separate alleged instances of malpractice by DeSantis: (1) filing the demand for arbitration beyond the three-year statute of limitations applicable to professional negligence based on Mark's gallbladder surgery; (2) failing to allege a cause of action for ordinary negligence against the Kaiser corporate entities; (3) failing to name additional individual Kaiser doctors as respondents; (4) failing to retain or consult with a medical surgical specialist regarding Mark's gallbladder surgery; (5) failing to retain a

6

medical expert to render an opinion regarding Mark's gallbladder surgery and subsequent care; (6) failing to seek a medical opinion until after the demand for arbitration had been filed; (7) consulting with Dr. Woolf, who was a gastroenterologist and not qualified to render an opinion on surgery or infectious diseases; (8) failing to pay Dr. Woolf and obtain his medical opinion; (9) failing to retain an infectious disease expert regarding Mark's *E. cloacae* infection; (10) submitting a demand for settlement based on the theory that Mark's infection was caused by surgical clips, which was unfounded and contradicted by Dr. Woolf; (11) submitting a demand for settlement without expert opinions on medical malpractice, causation of monetary injury, and computation of monetary damages; (12) selecting an arbitrator whose son worked as a doctor at Kaiser; and (13) abandoning its representation of Mark and failing to take action to prevent harm to his interests.

The claim for failure to advise of action for loss of consortium, on behalf of Karen only, alleged that DeSantis had a duty to inform her that she had an action for loss of consortium. DeSantis allegedly failed to do so, causing Karen harm. The final claim for breach of fiduciary duty, on behalf of Mark only, alleged violations of the California Rules of Professional Conduct through DeSantis's alleged failure to act competently and to communicate significant developments to the Straasses during the Kaiser arbitration.

DeSantis filed a verified answer, denying the substance of most of the Straasses' allegations. DeSantis denied committing any negligence or breaching any duty. DeSantis also alleged various affirmative defenses.

After almost two years of litigation, DeSantis filed a motion for summary judgment on the Straasses' SAC. DeSantis argued that the Straasses' claims required expert legal testimony regarding the applicable standard of care. DeSantis contended that the Straasses' designated legal expert, their counsel Lawrence Wasserman, was unqualified to provide such testimony and was ethically prohibited from doing so as well. (See, e.g., Cal. Rules Prof. Conduct, rule 5-210.) DeSantis argued additionally that the California Rules of Professional Conduct did not provide an independent cause of action to the Straasses and that the Straasses could not prove damages in this " 'settle and sue' " case.

The Straasses opposed, arguing that DeSantis's motion was procedurally defective because its separate statement of undisputed material facts did not comply with the California Rules of Court, rule 3.1350. The Straasses also argued that their counsel, Wasserman, was qualified to render a legal opinion on the alleged malpractice and was not ethically prohibited from testifying. They later submitted a written consent for Wasserman to testify pursuant to Rule 5-210(c) of the California Rules of Professional Conduct. The Straasses disputed whether their claim for breach of fiduciary duty was viable and asserted that the issue had already been determined in connection with DeSantis's prior demurrer on the subject. The Straasses argued that DeSantis did not specifically address their claim for failure to advise regarding loss of consortium. The Straasses further argued that DeSantis had not met its burden on summary judgment to show either that the Straasses could not establish damages or that the prior Kaiser arbitration ended in a settlement.

Following a reply and surreply, the trial court issued a tentative ruling granting summary judgment. At the hearing on the court's tentative ruling, both parties submitted without substantive argument. (Wasserman requested only that the court change its description of him as "incompetent" to "not qualified." The court did so.) The court found that the Straasses "cannot establish essential elements of their causes of action because they lack qualified expert witness testimony." The court further found that the Straasses "are unable to establish they suffered damage as a result of defendants' conduct." The court entered judgment in favor of DeSantis, and the Straasses appeal.

DISCUSSION

I

We first address the procedural issues raised by the Straasses. The Straasses contend the trial court did not comply with Code of Civil Procedure section 437c, subdivision (g), in its order granting DeSantis's motion for summary judgment. That section provides, in relevant part, as follows: "Upon the grant of a motion for summary judgment, on the ground that there is no triable issue of material fact, the court shall, by written or oral order, specify the reasons for its determination. The order shall specifically refer to the evidence proffered in support of, and if applicable in opposition to, the motion which indicates that no triable issue exists." (Code Civ. Proc., § 437c, subd. (g).)

The Straasses claim that "the Trial Court Minutes granting the motion broadly state[], in effect, that everything that [DeSantis] did in their motion was correct and that everything that [the Straasses] did was wrong. That is not the specific reference required

9

by the statute."  The Straasses mischaracterize the trial court's order.  The order specified the court's reasons for granting the motion and identified the evidence supporting its findings by reference to specific items in DeSantis's separate statement of material undisputed facts.  The Straasses have not established any error under Code of Civil Procedure section 437c, subdivision (g).  Moreover, even if there was error, the Straasses have not shown why it would be cause for reversal.  (See *Unisys Corp. v. California Life & Health Ins. Guarantee Association* (1998) 63 Cal.App.4th 634, 640; *Soto v. California* (1997) 56 Cal.App.4th 196, 199.)

In their opening brief, the Straasses also appear to contend that the court abused its discretion in considering DeSantis's motion for summary judgment because DeSantis's separate statement did not comply with the California Rules of Court, rule 3.1350(d).  In their reply, the Straasses disclaim such a contention.  We therefore need not consider it. We note that this court has rejected similar contentions in the past.  (See *Truong v. Glasser* (2009) 181 Cal.App.4th 102, 118.)

II

A

The standards we apply to the substance of the court's order granting summary judgment are familiar.  "A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law.  [Citation.]  The burden of persuasion remains with the party moving for summary judgment.  [Citation.]  When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a

10

preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003 (*Kahn*).)

" 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.' " (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

"We review the record and the determination of the trial court de novo." (*Kahn, supra*, 31 Cal.4th at p. 1003.) "In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [the plaintiff's] evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

B

The Straasses contend that the trial court erred in finding that their causes of action required the testimony of a qualified expert. DeSantis disagrees, arguing that an expert is

required to establish that the conduct alleged by the Straasses is malpractice or otherwise wrongful.  We address the Straasses' three causes of action in turn.

1

The Straasses' cause of action for legal malpractice consists of the following elements:  " '(1) the duty of the attorney to use such skill, prudence and diligence as members of the profession commonly possess; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage.' "  (*Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 536.)  " 'The attorney is not liable for every mistake he may make in his practice; he is not, in the absence of an express agreement, an insurer of the soundness of his opinions or the validity of an instrument that he is engaged to draft; and he is not liable for being in error as to a question of law on which reasonable doubt may be entertained by well-informed lawyers.' "  (*Kirsch v. Duryea* (1978) 21 Cal.3d 303, 308 (*Kirsch*).)

"Plaintiffs' proof relative to these issues generally requires the testimony of experts as to the standards of care and consequences of breach.  'Expert evidence in a malpractice suit is conclusive as to the proof of the prevailing standard of skill and learning in the locality and of the propriety of particular conduct by the practitioner in particular instances because such standard and skill is not a matter of general knowledge and can only be supplied by expert testimony.' "  (*Lipscomb v. Krause* (1978) 87 Cal.App.3d 970, 976; see 1 Witkin, Cal. Procedure (5th ed. 2008) Attorneys, § 291, p. 367 ["The fact of breach is proved by expert opinion on whether the attorney followed the standards of skill and diligence prevailing in the profession."].)

"Expert testimony is needed when it will assist the trier of fact.  It is not appropriate in all cases.  [Citation.]  Where the attorney's performance is so clearly contrary to established standards that a trier of fact may find professional negligence without expert testimony, it is not required."  (*Day v. Rosenthal* (1985) 170 Cal.App.3d 1125, 1146 (*Day*); *Wilkinson v. Rives* (1981) 116 Cal.App.3d 641, 647-648.)  Moreover, where "the lay person's common knowledge includes the conduct required by the particular circumstances[,]" the "general rule" requiring expert testimony does not apply.  (*Unigard Ins. Group v. O'Flaherty & Belgum* (1995) 38 Cal.App.4th 1229, 1239 (*Unigard*).)

For example, in *Day*, the trial court described the attorney's malpractice as follows:  " 'The case from beginning to end oozes with attorney-client conflicts of interest, clouding and shading every transaction and depriving [the clients] of the independent legal advice to which they were entitled.  It involves kickbacks, favored treatment of one client over others; it involves amateurish attempts to deal in the hotel and oil business that would be humorous but for the tragic consequences.  It involves the extraction of fees from [multiple clients] for the same work performed.  It involves an undertaking to provide financial and investment advice and a complete and utter failure to provide it."  (*Day, supra*, 170 Cal.App.3d at pp. 1134-1135.)  The Court of Appeal explained that the attorney's "irresponsible 'representation' of [his clients] trampled on basic attorney obligations . . . ."  (*Id.* at p. 1147.)  Under these circumstances, the court concluded that expert testimony was not needed to prove the attorney's professional negligence.  (*Id.* at p. 1149.)

13

Here, by contrast, the Straasses' first allegation of malpractice, and the one on which their argument is primarily focused, consists of DeSantis's failure to file the Straasses' demand for arbitration within three years of Mark's gallbladder surgery. The Straasses argue that their allegation falls within the exception to the general rule that expert testimony is needed to establish legal malpractice. We disagree. It would not be within a layperson's common knowledge to consider what conduct was required of DeSantis under the circumstances of this case. (See *Unigard, supra*, 38 Cal.App.4th at p. 1239.) The applicable statute of limitations is affected by factors not addressed by the Straasses, including the potential presence of a foreign object (the surgical clips) in Mark's body, which could extend the statute, and Mark's admission that he knew the surgical clips had injured him soon after surgery, which could limit the statute to a time before Mark consulted DeSantis.[2] DeSantis's decision to file would also have to be assessed in light of the timing and scope of DeSantis's retention, DeSantis's diligence in investigating Mark's claims, Mark's statements to DeSantis, and the merits of Mark's claim. In light of these considerations, DeSantis's conduct is not "so clearly contrary to established standards" as to remove the general requirement for expert testimony. (*Day,*

---

[2]     The applicable statute provides as follows: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person." (Code Civ. Proc., § 340.5.)

14

*supra*, 170 Cal.App.3d at p. 1146.)  The applicable standards, i.e., the proper conduct of DeSantis under the circumstances, would require expert testimony.  (See *Jeffer, Mangels & Butler v. Glickman* (1991) 234 Cal.App.3d 1432, 1441 (*Jeffer Mangels*) ["The standard of care must be established so the jury can understand the 'propriety of particular conduct by the practitioner in particular instances because such standard and skill is not a matter of general knowledge.' "].)  Unlike *Day, supra*, 170 Cal.App.3d at pp. 1134-1135, where the attorney's malpractice was self-evident, DeSantis's alleged conduct would require the specialized knowledge of an expert to assess properly.[3]

---

[3]     In addition to *Day*, the Straasses cite *Goebel v. Lauderdale* (1989) 214 Cal.App.3d 1502 (*Goebel*) and *Stanley v. Richmond* (1995) 35 Cal.App.4th 1070 (*Stanley*) as examples of cases where expert testimony was not required.  Neither of these cases is persuasive because the instances of alleged malpractice here are readily distinguishable.  In *Goebel*, the court considered a bankruptcy attorney's advice to his client, a contractor who was in financial trouble.  (*Goebel*, at p. 1505.)  The bankruptcy attorney advised the contractor to collect $15,000 the contractor believed he was owed on a construction project and to stop work on the project.  (*Ibid*.)  Unbeknownst to the attorney, his advice caused the contractor to violate Penal Code section 484b, which forbade the contractor from collecting the money where it was actually owed to persons who furnished labor and material for the project.  (*Ibid.*)  Violation of that section constitutes a felony.  (*Ibid.*)  The client was subsequently arrested and convicted.  (*Id*. at p. 1506.)  Although the court's holding is ambiguous, it is reasonable to conclude that the court found that expert testimony was unnecessary under the circumstances of that case.  (*Id*. at p. 1508.)  As the court explained, "Quite simply, [the attorney] advised his client to break the law.  We see no problem in concluding that, as a matter of law, such conduct markedly departs from the skill and diligence attorneys commonly possess."  (*Id.* at p. 1509.)  In *Stanley*, while the court considered the issue of breach to be within the understanding of a lay jury, expert testimony regarding the standard of care applicable to a specialist attorney (there, family law) was in evidence.  (*Stanley, supra*, 35 Cal.App.4th at pp. 1092-1094.)  Given this testimony, whether the attorney breached the standard by her " 'total failure to perform even the most perfunctory research' on the legal issues" requested by her client was a question the jury could answer unaided by expert testimony.  (*Id.* at p. 1093, italics omitted.)  The facts of this case bear no relation to the circumstances of *Goebel* and

The other instances of malpractice alleged by the Straasses similarly fall within the "general rule [that] the standard of care against which the professional's acts are measured remains a matter peculiarly within the knowledge of experts." (*Unigard, supra*, 38 Cal.App.4th at p. 1239; see *Lipscomb v. Krause, supra*, 87 Cal.App.3d at p. 976.) In some cases, the Straasses concede that expert testimony would be required. In others, their arguments to the contrary are unpersuasive.

Two instances involve pleading issues: DeSantis's alleged failure to include an additional cause of action (for ordinary negligence) and additional respondents (individual Kaiser doctors) in Mark's demand for arbitration. The Straasses concede that the former would not fall within the common knowledge of a layperson. Regarding the latter, the Straasses do not offer any argument that expert testimony would not be required and, indeed, appear to concede the point on this allegation as well. We agree that these issues require expert testimony.

Six instances of alleged malpractice involve negligence in consulting and retaining medical experts. The handling of experts, and specifically the decision of an attorney to employ or seek opinions from them, is generally outside the scope of common knowledge. (See *Kirsch, supra*, 21 Cal.3d at p. 311 ["The extent to which an attorney, in the exercise of due care, will advance funds to hire investigators, depose witnesses, or perform tests on a client is not a matter of common knowledge."].) Here, the Straasses' malpractice claims involve specific allegations regarding DeSantis's retention and

*Stanley*. Moreover, *Stanley* appears to confirm that expert testimony was required at least on the standard of care applicable to an attorney.

16

payment of experts, the timing of DeSantis's consultations with experts, and the qualification of the experts DeSantis consulted. Contrary to the Straasses' assertions, a layperson has no experience in these matters and would be unable to assess DeSantis's conduct, under the circumstances of this case, without the aid of expert testimony. Moreover, in none of these instances was DeSantis's conduct a violation of clear and established standards, such that expert testimony would not be required.

Two other instances of alleged malpractice involve DeSantis's demand for settlement, which the Straasses allege was unsupported and at least partially contradicted by a medical expert consulted by DeSantis. The Straasses again concede that expert opinion "would be helpful in explaining the importance of submitting [a] strong medical opinion of the diagnosis, prognosis, and causation of the personal injury." However, the Straasses contend that no expert opinion is required to assess DeSantis's alleged negligence in including statements in Mark's settlement demand that were not supported or were contradicted by the medical expert consulted by DeSantis. We find the Straasses' contention unpersuasive. The tactical considerations involved in drafting a settlement demand do not fall within a layperson's common experience. (See *Kirsch, supra*, 21 Cal.3d at p. 309 ["Frequently an attorney is confronted with legitimate but competing considerations, and we have recently recognized a latitude granted the attorney engaged in litigation in choosing between alternative tactical strategies."].) Under the circumstances of this case—including Mark's later designation of the same expert when represented by Wasserman—we cannot say that a layperson would be equipped to assess

17

the statements made in the settlement demand. Nor have the Straasses pointed to any clear and established standard that DeSantis allegedly violated.

The final two instances of alleged malpractice involve DeSantis's selection of an arbitrator whose son worked for Kaiser and DeSantis's withdrawal from their representation of Mark in the arbitration. Again, the Straasses state that "foundational expert legal testimony would be helpful" to explain the selection process for arbitrators. While we agree, the focus of the Straasses' statement is misplaced. What would be helpful to a layperson, and indispensible in considering the Straasses' allegation of malpractice, would be expert testimony regarding the circumstances of DeSantis's selection of the arbitrator in question, the considerations for and against such a selection, and what conduct would be expected of an attorney of ordinary skill in the same situation. Similarly, the fact that DeSantis withdrew from representation must be assessed in light of the circumstances, including Mark's testimony regarding the discovery of his injury. A layperson would have no tools to assess the propriety of DeSantis's action in this case. The Straasses contend that "[t]he applicable specific Rule of Professional Conduct would be subject to judicial notice[,]" but they do not name such a rule or explain how a layperson could understand or apply it under the circumstances of this case without the aid of expert testimony. An attorney who seeks to withdraw from a representation does not invariably commit malpractice. The Straasses have not shown that DeSantis's conduct violated a clear and established standard that would exempt their allegations from the general rule requiring expert testimony.

18

Unlike *Day* and *Goebel*, the instances of legal malpractice alleged by the Straasses involve the application of legal judgment under complex and shifting circumstances. (See *Kirsch, supra*, 21 Cal.3d at p. 309.) Notably, neither *Day* nor *Goebel* was primarily focused on the tactical litigation decisions at issue here. In the context of contested medical malpractice litigation, the need for expert testimony on the Straasses' allegations is apparent. The Straasses' allegations involve situations and conduct beyond the common knowledge of laypersons and for which no clear standards have been established. For the reasons we have stated, we conclude that the Straasses were required to produce expert testimony to establish their legal malpractice claim.

2

Karen's cause of action for failure to advise on loss of consortium "is for professional negligence, in the nature of attorney malpractice. That aspect of negligence consists of the failure of an attorney to 'use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake.' " (*Meighan v. Shore* (1995) 34 Cal.App.4th 1025, 1034.) The standards governing the necessity of expert testimony in legal malpractice actions therefore apply to this cause of action as well. The Straasses contend that legal expert testimony is unnecessary to establish Karen's claim because "the attorney's legal duty can be established by judicial notice of the duty to advise her of her cause of action" for loss of consortium. But the Straasses do not show that DeSantis's duty under the circumstances—and subsequent breach of that duty—was so clear and established that it

19

would be understandable by a layperson. Indeed, the undisputed evidence shows that DeSantis referenced loss of consortium in Mark's settlement demand to Kaiser.

The scope of DeSantis's duty to advise Karen on loss of consortium and DeSantis's alleged breach must account for the facts known to DeSantis, the value of Karen's potential claim, litigation considerations, the actions undertaken by DeSantis (including the arbitration and settlement demands), and numerous other factors beyond the common knowledge of laypersons. (See *Kirsch, supra*, 21 Cal.3d at p. 309.) Moreover, Karen's ability to recover for loss of consortium depended on the success of Mark's medical malpractice claim. (See *Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 746.) Again, unlike *Day* and *Goebel*, the conduct Karen alleges is neither so clearly malpractice nor so within the common knowledge of laypersons as to remove it from the general rule requiring expert testimony in legal malpractice actions. Qualified expert testimony is required.

3

Mark's cause of action for breach of fiduciary duty "is a species of tort distinct from a cause of action for professional negligence. [Citations.] The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley, supra*, 35 Cal.App.4th at p. 1086.) "The scope of an attorney's fiduciary duty may be determined as a matter of law based on the Rules of Professional Conduct which, 'together with statutes and general principles relating to other fiduciary relationships, all help define the duty component of the fiduciary duty which an attorney owes to his [or her] client.' " (*Ibid*.) At least one court has stated that "[e]xpert testimony is not

20

required" on the issue of breach.  (*Id.* at p. 1087.)  However, "a judge may resort to expert testimony to establish the standard of care when that standard is not a matter of common knowledge or where the attorney is practicing in a specialized field."  (*David Welch Co. v. Erskine & Tulley* (1988) 203 Cal.App.3d 884, 893.)  The standards governing expert testimony in legal malpractice actions are therefore informative here as well.

To show error, the Straasses reference their prior argument with respect to Mark's legal malpractice cause of action, apparently recognizing the overlapping standards and the substantial similarity between their factual allegations in the two causes of action.[4] We find this reference unpersuasive for the reasons set forth in part II.B.2, *ante*.  The Straasses have not raised any additional issues regarding the necessity of expert testimony to Mark's cause of action for breach of fiduciary duty.  "Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiff['s] brief.  [Citations.]  Issues not raised in an appellant's brief are deemed waived or abandoned."  (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.)  Moreover, even if we were to consider the factual allegations underlying Mark's breach of fiduciary duty claim, we would conclude that expert testimony would be necessary to establish that claim.  Mark bases this claim on allegations that DeSantis failed to act "competently" and failed to "communicate significant developments" in the

---

4      Despite this reference, the Straasses claim on reply that this ground for summary judgment was not briefed in the trial court.  We disagree.  Although DeSantis urged an additional, alternative ground for summary judgment on this claim, DeSantis also argued that all of the Straasses' claims, including breach of fiduciary duty, required expert testimony.  The trial court agreed.

21

case to the Straasses. (See Cal. Rules Prof. Conduct, rules 3-110, 3-500.) These broad standards would require explanation by an expert witness to be meaningful to a lay jury under the circumstances alleged here.

C

Because we conclude that the Straasses' causes of action require qualified legal expert testimony, we next consider whether the court properly granted summary judgment because the Straasses lacked such testimony. As a general matter, the qualification of experts may be assessed on summary judgment. (See *Littlefield v. County of Humboldt* (2013) 218 Cal.App.4th 243, 256-257 [affirming summary judgment where opposing party failed to offer qualified expert testimony on an essential issue].) "The same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment. Declarations must show the declarant's personal knowledge and competency to testify, state facts and not just conclusions, and not include inadmissible hearsay or opinion." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761 (*Bozzi*).) Such declarations are therefore subject to foundational challenges. "For example, the lack of foundation of an expert's testimony can be as to the expert being qualified, the validity of the principles or techniques upon which the expert relied, or as to the reliability and relevance of the facts upon with the expert relied." (*Howard Entertainment, Inc. v. Kudrow* (2012) 208 Cal.App.4th 1102, 1114 (*Howard*).)

"The declarations in support of a motion for summary judgment should be strictly construed, while the opposing declarations should be liberally construed. [Citation.]

22

This does not mean that courts may relax the rules of evidence in determining the admissibility of an opposing declaration.  Only *admissible evidence* is liberally construed in deciding whether there is a triable issue."  (*Bozzi, supra*, 186 Cal.App.4th at p. 761.)

Of course, the qualifications of an expert for a plaintiff opposing summary judgment may only be considered where the moving defendant has met its burden, i.e., where it has "present[ed] evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or [has] establish[ed] that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn, supra*, 31 Cal.4th at p. 1003.)  Here, as an initial matter, the Straasses appear to contend that DeSantis has not met its initial burden.  We disagree.  DeSantis set forth the nature of the Straasses' claims, as alleged in their complaint.  DeSantis further introduced the Straasses' expert witness disclosure under Code of Civil Procedure section 2034.260 identifying their counsel, Lawrence Wasserman, as their sole legal expert witness.  DeSantis used that disclosure, as well as other evidence and allegations in the Straasses' complaint, to show that Wasserman was unqualified or unable to offer expert legal opinions supporting the Straasses' claims.  As explained more fully below, this evidence was sufficient to shift the burden to the Straasses to establish Wasserman's qualifications.  The fact that this argument did not raise a substantive defense to the Straasses' claims (e.g., that DeSantis was not negligent) is irrelevant because DeSantis established another way in which the Straasses would be unable to establish their claims:  they lacked a qualified legal expert witness.

23

The parties dispute the applicable standard by which we review the trial court's determination that Wasserman was unqualified. DeSantis urges us to adhere to the traditional rule that evidentiary rulings made in the context of a summary judgment decision are reviewed for abuse of discretion. (See *Miranda v. Bomel Construction Co.* (2010) 187 Cal.App.4th 1326, 1335.) The Straasses argue that the trial court did not rule on any specific evidentiary objections made by the Straasses, and thus de novo review is appropriate. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535 (*Reid*).)

Here, the trial court stated the following: "Plaintiffs' Evidentiary Objections are overruled. The Court declines to rule further on specific objections as to evidence that the Court did not rely upon in rendering its decision. Any evidence cited in support of the Court's ruling herein, is deemed admissible and any objection made to that evidence is considered overruled. The Court disregards all evidence which is found to be incompetent or inadmissible." The court then expressly found that DeSantis showed the Straasses "lack[ed] qualified expert witness testimony" and could not establish damages. Because the Straasses did not create triable issues of material fact on these issues, the court found summary judgment appropriate. Following its findings, the court referenced 30 undisputed facts from DeSantis's separate statement.

The court plainly addressed the merits of Wasserman's qualifications; it was one of the grounds supporting DeSantis's motion. The court's analysis is therefore distinguishable from *Reid*, where the trial court " 'decline[d] to render formal rulings on evidentiary objections' " and simply stated it was relying " 'on competent and admissible

evidence.' " (*Reid, supra*, 50 Cal.4th at p. 533.)  Unlike *Reid*, where "there was no exercise of trial court discretion," the trial court here expressly determined that Wasserman was unqualified.[5]  In *Reid*, "the Supreme Court expressly left open the question of whether a de novo standard or an abuse of discretion standard applies to evidentiary rulings [actually made] in connection with summary judgment motions . . . ." (*Howard, supra*, 208 Cal.App.4th at p. 1114.)  We need not reach this issue because our conclusion would be the same under either standard.

2

"A person is qualified to testify as an expert if he has special knowledge, skill, expertise, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates."  (Evid. Code, § 720, subd. (a).)  " '[T]he qualifications of an expert must be related to the particular subject upon which he is giving expert testimony.' [Citation.]  Consequently, 'the field of expertise must be carefully distinguished and limited' [citation], and '[q]ualifications on related subject matter are insufficient' [citation]."  (*Howard, supra*, 208 Cal.App.4th at p. 1115.)  " 'Whether a person qualifies as an expert in a particular case . . . depends upon the facts of the case and the witness's qualifications.' [Citation.]  '[T]he determinative issue in each case is whether the witness

---

5       In their briefing, the Straasses claim that certain evidence offered by DeSantis was inadmissible and should not have been considered by the trial court.  However, they do not support their claims through reasoned argument or authority under any standard of review.  We therefore consider such contentions waived.  (See *Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956 [" 'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "].)

has sufficient skill or experience in the field so his testimony would be likely to assist the jury in the search for truth.' " (*Ibid.*)

The qualifications of an expert retained by a party opposing summary judgment should be liberally construed. "The rule that a trial court must liberally construe the evidence submitted in opposition to a summary judgment motion applies in ruling on both the admissibility of expert testimony and its sufficiency to create a triable issue of fact." (*Garrett v. Howmedica Osteonics Corp., supra*, 214 Cal.App.4th at p. 189.) However, the trial court must still determine whether the expert's qualifications—even liberally construed—are sufficient. (See *Bozzi, supra*, 186 Cal.App.4th at p. 761.)

Here, the Straasses' claims relate to DeSantis's handling of their medical malpractice arbitration against Kaiser, including DeSantis's drafting and submitting the Straasses' arbitration and settlement demands, DeSantis's retention and consultation of medical experts, DeSantis's selection of an arbitrator, DeSantis's decision to withdraw from the case, and DeSantis's advice regarding loss of consortium. While Wasserman has been an attorney for over 45 years, he had never handled a medical malpractice case prior to his representation of the Straasses. As Wasserman explained in his declaration opposing DeSantis's summary judgment motion, "At all times I advised [the Straasses] that I was not seeking new cases, I have never done a medical malpractice case, I did not want to do a medical malpractice case and was trying to fully retire as an attorney."

Wasserman also explained that he had not maintained an active office for the practice of law since 1996. From 1996 through 2003, Wasserman primarily wrote appellate case summaries for two legal newspapers. Prior to 1996, Wasserman had a

varied legal career. He began work on criminal matters then moved on to civil law as a "neighborhood sole practitioner." Several of his cases involved personal injuries and included medical expert testimony. He spoke with colleagues about these cases. After about 10 years, Wasserman moved on to transactional law, including property acquisition, building contracts, and corporations. He also did some bankruptcy work.

Wasserman's description of his experience does not establish his qualifications as an expert under the circumstances of this case. In general, "[w]here a malpractice action is brought against an attorney holding himself out as a legal specialist and the claim against the attorney relates to his expertise, then only a person knowledgeable in the specialty can define the applicable duty of care and render an opinion on whether it was met." (*Goebel, supra*, 214 Cal.App.3d at p. 1508; see *Wright v. Williams* (1975) 47 Cal.App.3d 802, 810-811.) This principle accords with the established standard in medical malpractice cases, that a medical expert's " 'qualification must relate to the branch of the medical field involved in the case . . . .' " (*Jeffer Mangels, supra*, 234 Cal.App.3d at p. 1442.)

By his own admission, Wasserman had never handled a medical malpractice matter prior to his representation of the Straasses. Although aspects of his practice touched on matters relevant to medical malpractice (including working with medical experts), they do not qualify Wasserman as an expert on the matters alleged by the Straasses because they were too remote in time and unrelated to the aspects of legal practice at issue here. Similarly, although Wasserman claims to have consulted with more experienced colleagues regarding personal injury cases, he has not shown that he

27

gained significant relevant experience through such consultations. "[A]n attorney who has studied the field . . . and contacted other professionals for additional exposure to the subject is qualified to provide expert testimony on the subject[,]" but "the depth of study and exposure is relevant in determining if the attorney is sufficiently qualified." (*Jeffer Mangels, supra*, 234 Cal.App.3d at p. 1441.) Wasserman has not shown the requisite experience even under this alternative avenue.

Wasserman's conduct as the Straasses' counsel in the underlying medical malpractice action supports this conclusion. In her declaration submitted in opposition to summary judgment, Karen Straass stated that "[j]ust before the Arbitration hearing date Mr. Wasserman told us that he did not feel he was adequately prepared for the arbitration and was going to dismiss the case." In an e-mail to a colleague that the Straasses submitted in opposition to summary judgment, Wasserman wrote, "Lawrence Wasserman (me) prepared the case. In concentrating on liability I neglected to brief my expert witness on causation or damages. He emphatically stated during his deposition that he had not been retained to render an opinion on that. Kaiser made a motion to exclude evidence of causation. I dismissed the case on the eve of the hearing." Wasserman's statements about his experience with experts are particularly relevant here because several of the Straasses' malpractice allegations focus on DeSantis's handling of experts as well.

The Straasses' SAC corroborates these statements. The SAC alleges, "Attorney Wasserman could not secure experienced representation and continued to represent Mr. Straass until the day before the start of the arbitration hearing, was not prepared to

28

proceed and dismissed the arbitration proceedings." The SAC further alleges, "The negligence of [DeSantis] was the actual and proximate cause of the damages to plaintiff, Mark Straass. The subsequent negligence of attorney Wasserman was not a superseding cause to the negligence of [DeSantis]." In her declaration, Karen confirmed that Wasserman told the Straasses they should consider whether Wasserman had been negligent in his representation.

The Straasses contend that the allegations of the SAC may not be used against them on summary judgment. The Straasses are incorrect. "[A] defendant may rely on the complaint's factual allegations, which constitute judicial admissions. [Citations.] Such admissions are conclusive concessions of the truth of a matter and effectively remove it from the issues. [Citations.] A plaintiff cannot create a triable issue through declarations that contradict the complaint's factual allegations." (*Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 222, fn. 3.) The Straasses further claim that "[i]t is not a binding admission by Wasserman, because a plaintiff cannot admit anything against a third party." The Straasses' focus on Wasserman is misplaced, however, since the parties to be bound are the Straasses. They are the parties opposing summary judgment, and they are the parties offering Wasserman as an expert witness. The allegations of their complaint may properly be considered on summary judgment. (*Ibid.*) And, even setting aside these allegations, the relevant facts regarding Wasserman's handling of the underlying arbitration matter are amply supported by the declarations that the Straasses themselves submitted in opposition to DeSantis's summary judgment motion, as we have discussed.

We are mindful that parties may encounter difficulties retaining qualified experts, particularly in professional negligence actions like the Straasses'. " '[I]t is obvious that an overly strict standard of qualification would make it difficult and in some instances virtually impossible to secure a qualified expert witness.' " (*Jeffer Mangels, supra*, 234 Cal.App.3d at p. 1439.) Thus, an expert witness need not have handled the precise matter at issue in the action for which he or she has been retained. (*Id.* at p. 1441.) However, the expert must have sufficient knowledge and experience to enable him or her to opine intelligently on the issues involved in the underlying matter. The guiding principle in all cases is whether expert witnesses "demonstrate sufficient knowledge of the subject that their opinions will be helpful to the jury in the search for the truth." (*Id.* at p. 1443.) Even liberally construing Wasserman's qualifications, as we must, he does not have sufficient knowledge of the subjects encompassing the Straasses' allegations for his testimony to be helpful to a jury. The court did not err in finding Wasserman unqualified and granting summary judgment on the Straasses' claims.[6]

---

[6]  In light of our conclusion, we need not reach the alternative grounds for affirmance urged by DeSantis:  that Wasserman should be ethically prohibited from providing expert testimony on behalf of his clients and that the Straasses cannot establish damages as a result of DeSantis's alleged legal malpractice and other wrongful conduct.

DISPOSITION

The judgment is affirmed.  Appellants to bear respondents' costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.